Clarence YOUNG, Plaintiff in Error,

v.

The STATE of Oklahoma, Defend-
ant in Error.

No. A–14546.

Court of Criminal Appeals of Oklahoma.

Oct. 16, 1968.

Frasier, Richard, Mefford & Frasier, Tulsa, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Don Timberlake, Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge.

Clarence Young, hereinafter referred to as defendant, was charged by Information jointly with Clyde Renfro and Bob Bentley, acting in concert with one Wilford Dion Moore in connection with the armed robbery of Walker's Superette, located at 4300 West Okmulgee Street, Muskogee, Oklahoma. Severance was granted and at the trial of the defendant the following evidence was adduced.

Mr. Hugh E. Walker, owner of Walker's Superette, and his employee, Mrs. Marilyn Hamby, testified that on the evening of February 12, 1966, a lone, armed gunman robbed Mr. Walker's store of the sum of approximately $1,800.00 in currency and took with him two billfolds, one of which was Mr. Walker's western style billfold which had his initials stamped on it. The gunman escaped on foot at approximately 9:00 p. m. This gunman was identified by both of these witnesses as Wilford Dion Moore. Mr. Walker identified a billfold later introduced into evidence as State's Exhibit No. 1, as being one of the articles taken from his person on the evening of the robbery. Myrtle Wells, who was parked outside the store, corroborated the testimony of the two previous witnesses as to the circumstances surrounding the holdup.

Wilford Dion Moore testified that on the evening in question he robbed the Walker Superette and corroborated the details of the robbery previously testified to by Mr. Walker. This witness testified that he, Cotton Davis and Joe Ray Howell left Tulsa, Oklahoma, at approximately 2:30 in the afternoon in a car that Joe Ray Howell had borrowed from a girl in McAlester. When they arrived near Muskogee, they met Clyde Renfro and went to the 69 Club where they were joined by the defendant and Bob Bentley. They had a few drinks and then proceeded to the apartment of Lawson Logan, Apartment 22. While at the 69 Club and later at Logan's apartment, they discussed and planned the robbery of one Bill Bull whose practice it was to carry a large amount of money on his person. This robbery was to take place around 7:30 at Bull's place of employment. They left in the defendant's car and parked a half a block from him and Clyde Renfro and Moore walked down to Bill Bull's, but he was not there. Moore stated that the defendant said there was a supermarket that could be robbed. The defendant, Renfro and Moore went to the supermarket to check and circled the block several times, then returned to the apartment where they had left Joe Ray Howell and Cotton Davis. They then proceeded to Logan's apartment about 8:00. Lawson Logan came to the apartment about 8:00 and stayed about fifteen minutes. No plans were discussed in Logan's presence but after he left, the defendant and Clyde Renfro discussed with Moore the robbery of the Walker Superette. Renfro and Moore were driven to the Walker Superette where the defendant parked his car and waited while Renfro accompanied Moore into the store to "show him what Walker looked like." (CM–87). Renfro left and Moore committed the robbery, returned to the defendant's car and the three of them drove to Logan's apartment where they divided the money into five shares. These shares were divided between Renfro, Young, Davis, Bentley and Moore. After dividing the money,

several of the parties left and Moore discovered that the billfold had not been disposed of. He threw this billfold in a closet in Logan's apartment. Logan returned to the premises at approximately 11:00 p. m. Moore testified that he had never met Logan prior to seeing him in the apartment on February 12th.

The next witness was Joe Ray Howell, whose testimony was substantially the same as that given by Moore relative to the plans to rob Bill Bull. He testified that he was present when the robbery of Walker's Superette was planned. He was also present when Moore, Renfro and Young returned to the apartment. He testified in pertinent part as to how the money was divided. At pages 126 and 127 of the case-made the following testimony appears:

"Q. [District Attorney] Who split up the money, Mr. Howell?

A. Bud Moore, Clarence Young, Clyde Renfro and Cotton Davis.

Q. Now when your're talking about splitting, do you mean who got a cut or who actually split the money, Mr. Howell?

A. Well, Bud Moore wasn't in on cutting the money up. I believe it was Clarence Young and Cotton Davis that counted it out.

Q. Clarence Young and Cotton Davis counted it out. Did you see it counted out?

A. Yes.

Q. Did you see who got splits and shares after it was cut up?

A. Yes.

Q. Who, Mr. Howell?

A. Bud Moore, Cotton Davis, Clarence Young and Clyde Renfro.

Q. Four?

A. There was five ways split. Clarence Young took Bob Bentley's share."

The next witness to testify on behalf of the State was Clarence Batson, who testified that some time around the middle of January, 1966, and the latter part of that month, he, Clarence Young, and Clyde Renfro had gone together to the Walker Superette for the purpose of planning a robbery. He stated that they had gone there two or three times for that purpose. He testified:

"We observed the area around the supermarket and Mr. Walker himself and trying to figure out where he kept his money and trying to figure out what would be the best time to burglarize the store or rob him." (CM–146).

Sheriff Bill Vinzant testified that on the 3rd day of September, 1966, he conducted a search of the apartment of Lawson Logan, who had moved to 111 North 10th Street, Muskogee, Oklahoma. He identified State's Exhibit No. 1 as having been found in that apartment. By agreement of the parties, the transcript of the testimony of Lawson Logan (deceased at the time of trial) was read to the jury. His testimony in substance was that he owned a retail liquor store and lived at 111 North 10th St., Muskogee, Oklahoma. On February 12, 1966 he lived at the Kenmore Plaza, Apartment No. 22. He pointed out and knew Clarence Young, Clyde Renfro and Bob Bentley. He said that Clarence Young had asked to use his apartment on February 11th, and he agreed. On February 12th he came to the apartment three times, the first time at 6:00 in the evening, at which time Joe Howell and Cotton Davis were there. They said they were friends of Clarence Young and he left shortly thereafter. He came back between 8:00 and 9:00, at which time Clyde Renfro, Clarence Young, Joe Howell, Moore and Cotton Davis were there. He stayed about fifteen or twenty minutes. No mention of a robbery was made. He came back about 11:00 and stayed about a half an hour and had a couple of drinks. Only two people were there at that time—Moore and Howell.

He then said that Cotton was there when he first arrived, but he left immediately. He never saw Mr. Bentley at the apartment on that evening. It was the first time he had met Moore, Cotton Davis and Joe Ray Howell. He had met Renfro, Young and Bentley before. He had no knowledge that a crime had been committed in Muskogee County until he read it in Sunday's newspaper. He moved to the new apartment in the middle of August, at which time he discovered the western type billfold. He debated about throwing it away, as he had never owned one and had no idea to whom it belonged, and carried it over to his new apartment in a box.

Clarence Young testified in his own behalf, stating that he was married and had two daughters. He testified that on February 12, 1966, he was at work for Tom Sellers and although the shop closed at 1:00, he worked as a body repairman until 4:00. He admitted having a few drinks during the afternoon and at 4:00 he walked to Lawson Logan's liquor store. He left there and went to Logan's apartment at 10th and Okmulgee where he kicked off his shoes and lay down on one of the twin beds. He was a very good friend of Logan's and it was his practice to go to his apartment. The next thing he recalled was his brother-in-law, Clyde Renfro, shaking him and waking him at about 8:15. He recalled that some other people were there, but he did not know them. He later learned that they were Wilford Dion Moore, Joe Ray Howell, and one person whose identity he did not learn. Renfro then took him home and he did not leave home again. He testified that he had no criminal record and had never been in any trouble.

Tom Sellers then testified that he was the employer of the defendant and testified that he had a good reputation in the community. Booster Siner also testified as to the defendant's reputation and that he had worked with him. Jack Cartland testified as to the defendant's reputation and truthfulness, honesty and standing in the community.

At the conclusion of the testimony above set forth, the trial court instructed the jury and the defendant objected to the giving of Instructions No. 6 and 7. Since the giving of these instructions are pertinent to one of the two assignments of error urged on appeal, we deem it necessary to set them forth.

"INSTRUCTION NO. 6

The Statute Laws of the State of Oklahoma further provide as follows:

'A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.' (22 O.S.1961, Section 742).

You are instructed that an 'accomplice' is one culpably implicated in the commission of the crime of which the defendant is accused or is one who knowingly and voluntarily cooperated, aids, abets or assists in the commission of such crime.

Corroboration of an accomplice means the strengthening, confirming or fortifying of the probative, criminating force of his testimony; that is, such strengthening, confirming or fortifying which leads an impartial and reasonable mind to believe that the material testimony of the accomplice is true.

In determining whether or not the testimony of an accomplice has been corroborated, you should eliminate his testimony entirely and then examine all of the remaining testimony of the other witnesses, facts and circumstances and ascertain from such examination whether there is any evidence tending to connect the defendant with the offense or crime

with which he is charged in the Information and if there is, then the testimony of the accomplice is corroborated.

You are further instructed that such corroborating evidence may be circumstantial, and it is not necessary that the required corroborative evidence cover every material point testified to by the accomplice, and it is sufficient if you find that the evidence of the accomplice is corroborated in some material point which tends to connect the defendant with the commission of the offense charged.

You are further instructed that the testimony of one accomplice cannot be corroborated by the testimony of another accomplice.

INSTRUCTION NO. 7

You are instructed that under all the evidence in this case that the witnesses

Wilford Dion Moore and Joe Ray Howell are accomplices, and for that reason you cannot convict the defendant upon the testimony of them, or either of them, unless you find in the case that they have been corrorborated by other evidence in the case, independent of theirs, which tends to connect the defendant with the alleged commission of the crime charged."

Closing arguments were made by the respective parties and the jury retired to deliberate. At the request of the jurors they were returned to the courtroom where, by agreement of the respective parties, the transcript of the testimony of Lawson Logan previously introduced, was read to them by the substitute court reporter. They again retired to deliberate and after deliberation returned a verdict finding the defendant guilty of Armed Robbery and assessing his punishment at five years imprisonment in the State Penitentiary. The date of judgment and sentence was set for the 14th day of June, 1967, and prior to the judgment and sentence a Motion for New Trial was filed, setting forth ten

assignments of error, only one of which was argued to the court which was not briefed or argued before this Court on appeal. The Motion for New Trial was overruled and the judgment and sentence was pronounced on the 14th day of June, 1967. From this judgment and sentence a timely appeal has been perfected to this Court.

■■■ On appeal, the defendant first contends that the evidence as above set forth is wholly insufficient to support the verdict of the jury in that there is not sufficient evidence to corroborate the testimony of the accomplice. Title 22 O.S. § 742, as above set forth in Instruction No. 6 correctly sets forth the necessity of corroborating the testimony of an accomplice. Instruction No. 7, to which the defendant objected, was, in our view, not correct, but this error enured to the benefit of the accused. As can be seen by an examination of the testimony cited above, Howell was present when the defendant and the others planned the robbery of Walker's Superette, but he did not participate in the robbery nor did he share in the division of the proceeds from such robbery, although he was present when the defendant and others divided it. In our view, he was not an accomplice within the meaning of 22 O.S. § 742, set forth above. This being true, his testimony alone would have been sufficient corroboration of the testimony of defendant's accomplice Moore, if believed by the jury. We are fortified in this position by virtue of the fact that although Howell was originally charged as a defendant, the charges against him were dismissed. In addition to Howell's testimony, there is also the corroborative testimony of witness Batson, if believed by the jury, who testified that he had been present with defendant and his brother-in-law Renfro, on several occasions a few weeks prior to the robbery, when they planned how the robbery could be done. Also to be considered by the jury is the testimony of Lawson Logan, who testified that the previous day the defendant

had made arrangements to use his apartment on the evening of February 12th, and that he had visited said apartment around 8:00 p. m. on that date, shortly before the robbery was committed, and had met a number of men with whom he had not previously been acquainted and that Clarence Young was present at that time.

Also admissible for consideration by the jury was the testimony of Mr. Logan detailing how he found the wallet taken from Mr. Walker during the robbery, in his apartment some time after the crime had been committed.

■ Our holding in the instant case does not express an opinion as to the guilt or innocence of the accused; instead, we merely hold that there was evidence sufficient to submit the question of guilt or innocence to a jury. Should this case be presented anew to a jury, it is for them to determine from all the facts and attendant circumstances whether the defendant is guilty or innocent.

It is defendant's second proposition that the State of Oklahoma consistently referred to crimes other than the one that the defendant was attempting to defend himself against, and by so doing, they prejudiced the right of this defendant to a fair trial. In this connection the defendant sets forth page after page of testimony taken from the casemade which refers to the plans to rob Bill Bull.

■ In answering this proposition, the evidence is summarized in the State's brief as follows:

"On the afternoon of February 12, 1966, the defendant and several other individuals formulated a plan to commit an armed robbery a few hours later. (CM 69–70) Intricate details were considered, including actual participants, time of crime and place of hiding. Evidence was admitted concerning such planning sessions wherein an intended victim for the scheme was named by the defend-

ant. The general plan was initiated by the defendant and two accomplices; however, the venture was thwarted by the untimely absence of the intended victim. Immediately thereafter, the defendant suggested an alternative objective which he had already looked over. (CM 79) That objective being the Superette of Mr. Hugh Walker. Final plans were consummated and this crime was executed approximately one hour later by the defendant and the same two accomplices who originally acted in accordance with the general plan.

Certainly, a visible connection exists between the events of the evening of February 12, 1966, involving this defendant. It is abundantly clear that the motive for effecting the crime against Mr. Hugh Walker was the apparent failure to carry out the early stages of the general plan to rob Bill Bull."

The State, while recognizing the general rule that when a defendant is put upon trial for one offense he is to be convicted, if at all, by evidence which shows that he is guilty of that offense alone and the admission of evidence of other crimes, either prior or subsequent to the offense for which he is on trial is inadmissible, but argues that the plan to rob Bill Bull was recognized under the exceptions to the general rule which are that it tends to establish (1) Motive, (2) Intent, (3) The absence of mistake or accident, (4) A common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, and (5) The identity of a person charged with the commission of the crime on trial.

■ Notwithstanding the persuasive argument presented on behalf of the State, we are of the opinion that the rule enunciated in Koontz v. State, 10 Okl.Cr. 553, 139 P. 842, and cited many times with approval in this and many other jurisdictions, is controlling in the instant case. A

similar factual situation existed in Koontz wherein he and certain co-defendants were charged with robbery and over the objection of counsel for defense, testimony of a conspiracy between the same co-defendants to rob a bank was admitted in evidence. In the body of the opinion this Court, speaking through the Honorable Judge Doyle, stated:

"A number of errors are assigned in regard to the admission of certain testimony. Notwithstanding objection and exception of counsel for plaintiff in error, the court permitted witness Hal Buie to testify in reference to a conspiracy to rob the Cheyenne State Bank. This testimony takes up more than 60 pages of the record, and was clearly inadmissible, because, if true, it had reference to a separate and distinct proposed crime, entirely disconnected with the offense with which this defendant was charged. Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish a common scheme or plan, embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, or to connect the defendant with the commission of the crime charged. The general rule as to the admission of testimony of the commission of offenses other than the one charged is that it is inadmissible, and the evidence objected to does not fall within the exception of the general rule. It appears that the court, in its instructions, directed the jury to disregard and not consider this part of the testimony of the witness Hal Buie. However, we do not think that the admission of this testimony to the defendant's prejudice was, by any means, cured by giving the aforesaid instruction."

In accordance with Koontz v. State, supra, this case is reversed and remanded for further proceedings not inconsistent with this opinion.

NIX, P. J., and BRETT, J., concur.