**Clyde RENFRO, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–14411.**

Court of Criminal Appeals of Oklahoma.

Jan. 27, 1971.

Riley Q. Hunt, Jay, and Jesse L. Leeds, Muskogee, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Hugh H. Collum, Asst. Atty. Gen., Dell Gordon, Legal Intern, for defendant in error.

BRETT, Judge.

This is an appeal from a conviction for the crime of robbery with firearms sustained in the District Court of Muskogee County, Oklahoma. Plaintiff in error, who will hereafter be referred to as defendant, was tried by a jury, convicted and sen-

tenced to serve ten years in the state penitentiary.

The information filed in the district court alleged that the defendant and several others robbed the "Walker's Superette" grocery store in Muskogee, Oklahoma, while acting in concert with one Wilfred Dion Moore. The state offered the testimony of eight witnesses in presenting its case; however, only three of those witnesses were present in the store when the robbery occurred.

The first witness was Mr. Walker, the store owner; the second one was a clerk in the store; and the third witness was Mrs. Wells, who was parked at the curb waiting for her son, who worked for Mr. Walker. Each of these witnesses specifically denied seeing the defendant in or about the store. Other witnesses were the Sheriff of Muskogee County, who testified that with the aid of a search warrant he found Mr. Walker's wallet in a trash box in Lawson Logan's apartment. The other four witnesses, who appeared in the state's case in chief, were used to implicate the defendant in the crime charged.

Wilfred Dion Moore admitted that he was the one who held the pistol on Mr. Walker and robbed him. He implicated the defendant by testifying that the defendant entered the store with him, but left a minute or two before Mr. Walker was robbed. However, we observe the testimony of Mrs. Wells, who was parked in front of the store and observed Moore as he entered the store; her testimony was as follows:

"I saw a man come in and go in the store * * * then I seen Mr. Walker's hands go in the air, and then I seen the gun."

Mrs. Wells related also that Moore walked out of the store, turned the corner of the building and entered an automobile. She could not state whether or not there was anyone else in the car.

Joe Ray Howell implicated the defendant by testifying that he, Wilfred Dion Moore and one, Cotton Davis left Tahlequah and proceeded to Tulsa, where they stopped at the defendant's house for about an hour. They left and proceeded on to Muskogee; and in route they stopped at the 69 Club in Wagoner. Howell testified that the defendant drove his own car, with his wife and children, to the 69 Club, where he joined Howell and his friends. They were allegedly joined later by two other men and they all discussed a plan to rob the "Bill Bull Car Lot" in Muskogee. Over defendant's objections, this witness discussed at length the planned robbery of Bill Bull. He related further, that they proceeded to Lawson Logan's apartment and after some time the defendant, Moore and Young went to look over Bill Bull's place, but since it was closed they returned without committing the robbery. This witness allegedly remained back at the apartment, and just "sat out in front of that apartment with Cotton Davis." Howell continued, that "they" then planned the Walker Superette robbery, and Moore was to go in and rob Mr. Walker; the defendant and his brother-in-law, Clarence Young, were to pick Moore up after the robbery. After the robbery, Howell said that they "cut up the money" in Lawson's apartment. This witness also, allegedly saw Mr. Walker's wallet. The trial court found this witness to be an accomplice to the robbery. Considering all the details recalled by this witness, it is interesting to observe that he recalled that Lawson Logan returned to the apartment only twice, but Lawson Logan testified that he returned to his apartment three times; and, that it was only during the second visit that he recalled seeing the defendant in the apartment, about 8 o'clock P.M., which presence at that time the defendant admitted.

▮▮▮ The next witness offered was one, Clarence Batson, who lived in Tulsa. Batson allegedly received a telephone call the day after the Walker robbery, when the defendant purportedly informed Batson of the robbery. It was through the testimony of this witness, and that of Lawson Logan's account explaining the wallet

found in his apartment, by which the State establishes corroboration for the testimony of the known accomplices to the crime charged. However, insofar as this Court can take judicial notice of other cases pending on appeal, we do not place the credulence to Batson's testimony, as was apparently allowed by the jury and the trial court. We observe also, on cross-examination the defendant showed considerable possibility, at least, for animosity Batson might have had toward the defendant.

The defendant testified in his own behalf and related that on that Saturday, which was his day off work, he drove his wife and three boys to Muskogee where they planned to visit his brother-in-law, Clarence Young; that when they reached his brother-in-law's house Clarence was not there; so he went to Lawson Logan's liquor store and inquired if he had seen Clarence, and Logan informed him that he was probably in his—Logan's—apartment. The defendant testified that he went to the Logan apartment a little before eight P.M., and some ten minutes later Logan came in; that he had a couple of drinks after which he took his brother-in-law home and put him to bed, because Clarence was drunk. He related that he and his family then proceeded to his mother-in-law's home, where they spent the night and returned to Tulsa the next day. On direct examination, the defendant denied having any part in any conversation pertaining to the robbery of Walker's Superette. He testified further, that he had never been convicted of any crime, and the State did not show anything to the contrary.

In the companion case to the instant one, Young v. State, Okl.Cr., 446 P.2d 79 (1968), we observe that the state's witness, Clarence Batson, testified to the effect that prior to February 12, 1966, (the date of the robbery of the Walker Superette) that he, Bob Bentley, Clarence Young, and the defendant herein "checked" the market for a possible burglary; however, his testimony in this case skillfully fails to include any reference to his participation in the planning of this same robbery. Notwithstanding the fact that this Court recited in Young v. State, *supra,* that Batson's testimony is corroborative to support that of the accomplices, in face of the record before the Court in this case his testimony becomes *"suspect,"* to say the least. Considering Batson's testimony in the *Young* case, supra, (which concerned the same robbery this case involves,) Batson related sufficient testimony to show his part in the planning of the robbery, which he artfully avoided in his testimony herein. We are not called upon to ascertain whether or not he might be an "accessory before the fact" herein, as provided for in 21 O.S.1961, § 172, but at this stage of the proceedings we now know enough to cause little value to be placed on the testimony he gave in this trial. See Wishard v. State, 5 Okl.Cr. 610, 115 P. 796.

Consequently, as we review the record before the Court, the sole question to be answered concerns the corroborating testimony of Wilfred Dion Moore's accomplices, since he admittedly committed the crime charged.

22 O.S.1961, § 742, provides:

"A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

This Court stated in Luna v. State, 62 Okl.Cr. 435, 71 P.2d 1101, while reciting from Rogers v. State, 57 Okl.Cr. 294, 48 P.2d 344:

"Under the statute * * * (22 O.S. § 742) there cannot be a conviction unless there is proof of substantial facts tending to connect the defendant with the commission of the offense, aside from and without the aid of the accomplice's testimony, and it is self-evident that the main facts in this case cannot be corroborated by a collateral fact, the existence

of which is dependent upon the same class of testimony."

In Rogers v. State, supra, this Court, speaking through the late Judge Doyle, stated:

"The corroborative evidence must of itself, and without the aid of the testimony of the accomplice, tend in some degree to connect the defendant with the commission of the offense; *and independent evidence merely consistent with the main story is not sufficient corroboration if it requires any part of the accomplice's testimony to make it tend to* connect the defendant with the crime." (Emphasis added)

In the instant case, the only independent evidence offered consists of that provided by Lawson Logan, who testified that he saw the defendant in his apartment *one time* and, the testimony of Batson, who related that the defendant telephoned him the next day and told him of the robbery. Admittedly, the jury believed the testimony of Batson, but in reviewing this case—with knowledge which neither the jury nor the trial court possessed—we do not consider Batson's testimony to be sufficient corroborative testimony. Likewise, insofar as this Court has inherent power to do those things reasonably necessary for the proper administration of justice—within the scope of its jurisdiction—we feel compelled to consider Batson's role in the other cases before this Court in evaluating his testimony. See Layman v. State, Okl.Cr., 355 P.2d 444, 447.

In yet another related case before this Court, Batson appears as the "star witness," and admitted to his part in the planning of the crime; but, at the last moment he decided not to participate in the robbery and subsequently turned up again as the state's corroborating witness. Con-sequently, we do not consider the testimony of Clarence Batson, as being sufficient independent evidence to corroborate the accomplices to the crime in the instant case. And considering the testimony of Lawson Logan—without that of Batson—there is no corroborating evidence that this defendant participated in the robbery. The witnesses present when the robbery occurred testified that they did not see the defendant at all. Reciting again from Rogers v. State, supra, this Court said:

"The state only demands the punishment of a citizen when his guilt has been *clearly established* according to the forms and rules of law, prescribed for ascertaining his guilt. It is not to shield the guilty, but to protect the innocent, that the courts are steadfast in upholding the forms and rules of law by which it may be lawfully determined who are guilty." (Emphasis added)

Therefore, upon the consideration of the evidence, we are satisfied that the testimony of the accomplices to this crime was not sufficiently corroborated as the law requires; and for this reason, the verdict was contrary to the law and evidence, as contended by the defendant. We add, however, that this satisfaction results from a more complete array of information than what was available to the trial court during this trial. And, for the reason that we do not accept the testimony of Clarence Batson, as being sufficient, to confine a man to the penitentiary for a period of ten years.

We are, therefore, of the opinion the judgment and sentence in District Court Case No. 11161 in Muskogee County, Oklahoma, in which sentence was imposed on March 2, 1967, should be and the same is

Reversed.

NIX, J., concurs.