**Clifford Gerald LEWIS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–73–418.**

Court of Criminal Appeals of Oklahoma.
Nov. 19, 1974.
Rehearing Denied Dec. 5, 1974.

Elmore A. Page, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., William Thiebaut, Jr., Legal Intern, for appellee.

## OPINION

BUSSEY Judge:

Clifford Gerald Lewis, hereinafter referred to as defendant, was charged by Information filed in the District Court, Tulsa County, with the crime of Unlawful Sale and Delivery of Stimulating Drugs, Case No. CRF–70–2074, in violation of 63 O.S., § 2–401. He was tried by a jury who found him guilty, and, in accordance with their verdict, he was sentenced to five (5) years imprisonment and fined in the amount of One Thousand ($1,000.00) Dollars. From said judgment and sentence, a timely appeal has been perfected to this Court.

At trial the State's first witness was William M. McDonald, a police officer with the City of Tulsa, who was working on undercover narcotics investigations. He testified that at approximately 9:20 p. m. on the 7th day of October, 1970, he and an Officer McMillan went to defendant's mobile home and that Officer McMillan remained about half a mile from the mobile home while McDonald went up to the front door. He stated that he knocked and the defendant came to the door and told him to go around to the back. He then walked to the back of the mobile home, knocked on the door, and was told to enter.

In the transcript, at page 119 et seq., the following appears:

"Q. (By Mr. Truster) Officer McDonald, what conversation did you have after you made your initial comments to Mr. Lewis upon arriving at the trailer house?

A. Mr. Lewis looked at me and said, 'Do I know you,' in a questioning tone. And I said, 'Sure, I was out last week.'

MR. PAGE: All right. If Your Honor please, again I move for a mistrial.

THE COURT: I will deny and allow an exception and permit you to make a record at the first opportunity.

MR. PAGE: May I approach the bench just a moment, Judge.

THE COURT: I will allow an exception. I will give you an opportunity to make a record.

(A conference was held at the bench and thereafter the following proceedings were had before the jury.)

THE COURT: You may proceed with the examination.

Q. (By Mr. Truster) Officer, what happened next, please, sir?

A. I asked Mr. Lewis if the price would be the same as before. He said, 'Yes, $5.00 per cap.'

MR. PAGE: If Your Honor please, again I move for a mistrial.

THE COURT: Motion is denied, exception allowed.

Q. (By Mr. Truster) And what transpired after that, please?

A. He then turned to his wife and said, 'June, get two caps.' The lady, Mrs. Lewis, then went to the back bedroom of the trailer, returned possibly a minute

later with two small clear capsules filled with a white powder.

Q. And what happened with the capsules, sir?

A. They were handed to me. I then handed Mrs. Lewis a $10.00 bill.

Q. Did you have further conversation with Mr. Lewis as regards to the particular transaction?

A. Yes, sir, I told him that I would probably be back in a few days. He said, 'This is all of the caps I have. I will have some liquid, however.'

Q. Have some liquid?

A. Yes, sir.

Q. Now, sir, in your training as a narcotics officer have you come across the term liquid before?

A. Yes, sir.

Q. What does that mean?

MR. PAGE: I am going to object to that as having no probative value.

THE COURT: Overruled.

MR. PAGE: He hasn't qualified him as an expert.

MR. TRUSTER: He is a narcotics officer.

THE COURT: I will permit him to testify.

A. Liquid would be a—this implies a liquid, usually in a hermetically sealed or three cc. jug. It could be anything.

Q. Could be any narcotic drug?

A. Any drug, yes.

Q. What other conversation did you have with Mr. Lewis?

A. I left at this point and Mr. Lewis bid the usual goodbyes.

Q. Did you say—

MR. PAGE: If Your Honor please, again I move for a mistrial.

THE COURT: Motion denied.

\* \* \*"

Officer McDonald testified that he then left the residence, placed the capsules in a cellophane container, left them in his brief-case and two days later delivered them to Joe Norton, chemist with the City-County Health Department laboratory for analysis.

Joe Norton, the State's other witness, testified that he had examined the two capsules brought to him by Officer McDonald and that his analysis showed that each contained amphetamine sulfate.

The defendant called four witnesses whose testimony essentially established that they had been present in the defendant's home during the week of October 5th through the 12th, and that the defendant, due to an argument with his wife, had left the home and was not present during that week. Two witnesses testified that at the time in question they had observed the defendant in Langley, Oklahoma.

In defendant's first proposition of error he asserts that he was prejudiced by the trial court's admission of the above testimony given by Officer McDonald which contained statements of previous sales made by the defendant and of a plan between defendant and the officer for a future sale, and the same constituted evidence of other crimes and as such, were inadmissible. We disagree.

We first observe that there is nothing in the record to support the defendant's contention that there was testimony of a prior purchase in the week preceding the offense for which the defendant stands convicted, but the testimony only tends to establish that the parties were acquainted with each other and had discussed the price of the capsules. It is our opinion that the facts in this case are similar to, and fall squarely within the rule enunciated in Bradley v. State, Okl.Cr., 485 P.2d 767, wherein this Court, speaking through Judge Brett, stated:

" . . . Referring to the February 6th incident, Agent Ryan testified that the first time they came into contact with the defendant was about 10:00 P.M., February 6, 1968, at Leo's Tavern in Muskogee. He testified that they played pool together and talked, but he did not assert that a sale occurred on that date.

With reference to the testimony concerning contact with defendant about 9:30 P. M., February 15, 1968, when the partial can of marijuana was delivered and paid for, that testimony falls within the exceptions to the rule showing the existence of a scheme or plan for the illegal sale of marijuana and was admissible toward proof for the offense charged in this information alleged to have occurred some five hours later. When that delivery and sale was consummated, Agent Ryan agreed to pay Fifty Dollars for some more marijuana."

This evidence was also admissible when the defendant's identity was placed in issue by the presentation of an alibi defense and the admission of the prior meeting and discussion of drug prices therefore was admissible as tending to establish the identity of the defendant as that of the seller on the night in question. It is clear from the foregoing that the evidence complained of, falls within the exception to the general rule that evidence of other crimes may be admissible if it establishes motive, intent, absence of mistake or accident, a common scheme embracing commission of two or more crimes so related to each other that proof of one tends to establish the other, or identity of accused. See Young v. State, Okl.Cr., 446 P.2d 79 (1968) and Brown v. State, Okl.Cr., 487 P.2d 963 (1971).

▉ Defendant's next contention of error arises from the trial court's refusal to allow the jury to have a portion of the testimony at trial re-read to them during their deliberation. Defendant further complains that certain statements made by the trial judge in the presence of the jury had a coercive effect upon the jury which prevented them from making further requests for testimony. First, we have carefully read the comment complained of and we do not find that the trial judge's comments were improper. He simply explained to the jury that lengthy transcribing procedures would be necessary in order to prepare a transcript for their use. We fur-

ther find that the trial judge's denial of the jury's request to re-read the testimony of two witnesses, based on the determination that it would be repetitious and add undue emphasis to the testimony of those two witnesses was not an abuse of judicial discretion. See Jones v. State, Okl.Cr., 456 P.2d 613 (1969) and Lovelady v. State, Okl.Cr., 478 P.2d 983 (1970).

▉ Defendant's final proposition of error complains that certain comments made by the prosecutor during closing argument were improper and prejudicial. We first note that the record reflects that defense counsel did not object to any of these statements. Having failed to take exception to the remarks of the prosecutor, this issue was not properly preserved for review on appeal by this Court. Overstreet v. State, Okl.Cr., 483 P.2d 738 (1971). We have, however, reviewed the statements complained of and find, in regard to the comment by the prosecutor on the failure of defendant's wife to testify, that same is free from error. In Hilyard v. State, 90 Okl.Cr. 435, 214 P.2d 953 (1950), we held that where the wife of an accused might be a material witness in his behalf, and she is not placed on the stand by him nor is her absence accounted for, the failure of the defense to produce her as a witness is a legitimate matter for comment in closing argument. This rule was reaffirmed in Robinson v. State, Okl. Cr., 489 P.2d 1358 (1971). We agree with the State that the other remark of the prosecutor of which defendant complains, was, in fact, a conclusion based upon the evidence presented at trial. While the same is not looked upon with favor by this Court, we do not find that it constituted fundamental error and, absent objections on the part of defendant, this proposition is dismissed.

Finding no error sufficient to justify modification or reversal, it is the opinion of this Court that the judgment and sentence appealed from should be, and the same is hereby, affirmed.

BLISS, P. J., and BRETT, J., concur.