Robert HOWARD and Carolyn Ann Roe, Appellants,

v.

The STATE of Oklahoma, Appellee.

Nos. F–76–508 and F–76–509.

Court of Criminal Appeals of Oklahoma.

March 4, 1977.

Rehearing Denied March 23, 1977.

Don Anderson, Public Defender, Oklahoma County, for appellant Howard.

Jack L. Freeman, Oklahoma City, for appellant Roe.

Larry Derryberry, Atty. Gen., Douglas L. Combs, Asst. Atty. Gen., for appellee.

OPINION

BRETT, Judge:

Appellants, Robert Howard and Carolyn Ann Roe, hereinafter referred to as defendant Howard and defendant Roe, were jointly charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF–75–1146, for the offense of Robbery With Firearms, in violation of 21 O.S.Supp. 1974, § 801. The jury returned a verdict fixing the punishment of defendant Howard, who has two previous felony convictions, at fifty (50) years' imprisonment; and, the punishment of defendant Roe at ten (10) years' imprisonment. From said judgments and sentences each defendant has filed an appeal with this Court. Since the single assignment of error raised by defendant Howard is identical with one of the three assignments of error raised by defendant Roe, we have consolidated the two appeals for consideration here.

At trial the State introduced evidence to show that during the first week of March, 1975, Harold Hiawatha Stokes, who had a previous felony conviction for receiving stolen property, and an individual identified as Jim Cook (who was not a participant in the case at bar) discussed robbing several individuals, including William Strother. These discussions took place in the home of Johnny W. Ketchum, with whom they were living while in Oklahoma City and who was present during the discussions. The robbery plan involved the participation of a black man and a white woman, acquaintances of Stokes not present during the discussions, according to Ketchum's testimony.

On March 4, 1975, Stokes and Cook left Ketchum's house in the early evening. They drove to an address on Walker Avenue and picked up defendant Roe and a black man, identified by Stokes as defendant Howard. The group drove to the home of William Benjamin Strother, 125 S.W. 62nd Street, Oklahoma City, where Cook, defendant Roe and the black man got out of the car, at approximately 9:30 p. m.

Defendant Roe rang the doorbell while Cook and the black man put on ski masks

and hid in the shadows by the porch. Mrs. Carol Ann Strother, who was inside with her nine-year-old son and two-week-old daughter, answered the door. Defendant Roe told Mrs. Strother that someone was trying to hurt her and asked if she could use the telephone. As defendant Roe entered the house, Cook and the black man shoved her to one side and rushed into the living room. Cook grabbed Mrs. Strother, pointed a gun at her, forced her to lie on the floor and told her she was being robbed. The black man held Mrs. Strother's son. Defendant Roe left the house and joined Stokes in the car.

Cook told Mrs. Strother they wanted the large sum of money and two diamond rings they knew she had in the house. With the black man holding her arm and that of her son, Mrs. Strother led the men into the kitchen where she gave them some money. After Cook demanded more, Mrs. Strother took the group upstairs where she gave them more money. When they returned downstairs, Cook demanded the two rings. Mrs. Strother gave him the ring from her finger. He demanded the second ring, but Mrs. Strother told him the second ring had been sold.

The men forced her and her son to lie on the floor. Mrs. Strother's hands and feet were bound behind her back with tape which the men had brought with them. Her son was bound to her with the tape. The black man, who also may have had a gun, took her purse. Cook told Mrs. Strother to remain tied for ten minutes and he would call the police.

Cook and the black man joined Stokes and defendant Roe in the car and they drove to Ketchum's house. Stokes told Ketchum to have his wife and children leave the room. Cook, defendant Roe and the black man came inside. The money, which was estimated to be $12,000 at trial, was divided into three shares in the presence of Ketchum. Stokes left with defendant Roe and the black man approximately five minutes after they arrived.

Ketchum accompanied Cook to a pond near the H. E. Bailey Turnpike where they hid Mrs. Strother's purse. The two men returned to Ketchum's house. Cook and Stokes each gave Ketchum $200.00 from the proceeds of the robbery. The trio went to Louisiana. On returning to Oklahoma, they retrieved the purse from the pond, took a ring from inside the purse and hit it again.

Ketchum was arrested on March 26, 1975, and was held in custody for five days, during which time he took Detective Dannie Cochran to the pond and helped recover Mrs. Strother's purse. Stokes, defendant Roe and defendant Howard were arrested March 28, 1975. Ketchum has never been charged in connection with the robbery. Stokes was granted immunity from prosecution for his part in the robbery in exchange for his testimony against defendant Roe and defendant Howard. The status of Jim Cook cannot be ascertained from the record.

Ketchum identified defendant Howard as the black man who received a portion of the robbery proceeds, but was unable to identify defendant Roe as the woman participant. Various State's exhibits—including photographs of the scene of the robbery, tape used to bind Mrs. Strother and her son, and marks on Mrs. Strother's wrists and ankles from the tape, plus the purse and some of its contents—were identified during the trial by the victim, Ketchum and Cochran.

At the conclusion of the State's case-in-chief, the defense's demurrer to the evidence was overruled by the trial court.

Defendant Roe testified that on March 4, 1975, she lived in an apartment at 524 N.W. 8th Street, Oklahoma City. She had the night off from her job as a waitress at the El Dorado Club, which was owned by defendant Howard and Ronnie Kirk. At approximately 8:30 p. m. she took a cab to the apartment of a friend on the south side of Oklahoma City. Her friend was not home so she went to a nearby convenience store to call another cab.

While she was waiting for the cab, two men at the store offered to give her a ride home in their old model, dark blue car. The men drove defendant Roe around a nearby

residential neighborhood for awhile and then asked to have sexual intercourse with her. A struggle ensued. The driver stopped the car and defendant Roe managed to open the passenger's door and escape.

Defendant Roe testified that she ran to a nearby house and rang the door bell. When Mrs. Strother opened the door, defendant Roe asked if she could use the telephone. As she was entering the house, two men pushed by her and grabbed Mrs. Strother. Defendant Roe fled the house, found a store with a telephone and called for a cab. She was frightened and decided not to call the police to report the incident because the men who had attacked her in the car knew her name and address. She testified that she could not identify the men who entered Mrs. Strother's house, did not know the two men in the car, and had not seen defendant Howard since the middle of February.

Defendant Howard admitted a 1962 federal conviction on an unspecified narcotics charge and a 1968 state conviction for receiving stolen property. He testified that on February 26, 1975, he packed his clothes in his car for a trip to visit relatives and friends in Canton, Ohio. In the late afternoon he went to the El Dorado Club, which he owned in partnership with Ronnie Kirk, and took $250.00 from the cash register. In accordance with a procedure he followed with Kirk, defendant Howard wrote an I.O.U. for the money on the back of a business card.

He identified defendant's exhibit number 1 as the I.O.U. for the $250.00, which he stated was repaid approximately one and a half weeks after he returned from his trip.

Defendant Howard, who discussed his trip plans with several persons at the club before departing, gave a detailed description of the route he followed on his drive to Canton, where he arrived in the late evening of February 27, 1975. Defendant Howard stayed at the home of his mother and his two brothers. Between February 28th and March 10th he visited with relatives and friends in the Canton area during the day, attended various sporting events with his brother, Enoch "Booboo" Howard, on a few weekday evenings, and frequented local nightclubs on other evenings.

Defendant Howard also testified he talked with Canton police after the hubcaps were stolen from his car, and was present when the police investigated a burglary at the home of his cousin, Early Smith. He testified he left Canton and drove to Alderson, West Virginia, where he stayed at Eary's Motel from March 11th to the 15th. He identified defendant's exhibit number 2, which was not admitted into evidence, as being a record from the motel showing that an individual named "Howard" had spent five days there beginning March 11, 1975. The purpose of his trip to Alderson was to visit Linda Sue Poole, an inmate at the federal reformatory for women. He left Alderson on the afternoon of March 15th and drove to Oklahoma City, arriving March 18th.

Defendant Howard was arrested on March 28, 1975, questioned about the robbery, charged in connection with unspecified traffic tickets, and released. On April 28, 1975, he was arrested and charged in connection with the robbery. At trial, he denied knowledge of, or participation in, the robbery of Mrs. Strother. He also denied knowing either Stokes or Ketchum.

Linda Sue Poole testified that defendant Howard had visited her at the Alderson facility for five consecutive days beginning March 11, 1975.

Ronnie Kirk, defendant Howard's business partner, testified that he and Howard discussed the planned trip to Canton at the El Dorado Club on February 26, 1975. Kirk gave Howard the $250.00 from the cash register. He identified defendant's exhibit number 1 as the I.O.U. Howard had left in the cash register, and defendant's exhibit number 3 as a personal notebook in which he had recorded Howard's taking of the money. Kirk testified he assumed Howard made his trip to Canton during the three weeks following the 26th because he did not see Howard in this interval. Kirk estimated that Howard had repaid the $250.00

within two weeks of his return to Oklahoma City.

Enoch Howard, defendant Howard's brother, generally corroborated the events described by defendant Howard of the time he spent in Canton, Ohio.

John Hoskins, a Tinker Air Force Base employee, testified that he encountered defendant Howard at the El Dorado Club on February 26, 1975. The two men previously had discussed taking a trip together to Hoskins' home in Detroit, and Howard invited Hoskins. to go with him to Canton; however, Hoskins declined. He saw Howard leave the club in a car packed with clothes.

### I·

Defendant Roe and defendant Howard each assign as error the failure of the trial court to treat witness Ketchum as an accomplice and include him in Instruction No. 10, which reads:

"As to the witness, Harold Hiawatha Stokes, you are instructed that you are to determine from the foregoing instructions [which concern corroboration of an accomplice's testimony] whether or not he is an accomplice to the crime of which the defendants here stand charged, and if you determine that he is an accomplice, then you are instructed that you cannot convict the defendant[s] upon the testimony of said witness, unless you find that such testimony is corroborated as provided in the foregoing instruction."

■ The requirement that testimony of an accomplice be corroborated is found in 22 O.S.1971, § 742, which provides:

"A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely

show the commission of the offense or the circumstances thereof."

The intent of the statute is to prevent one guilty of a crime from implicating another falsely, for hope of clemency, or motives of revenge, or for any other reason. *Comba v. State*, 68 Okl.Cr. 373, 99 P.2d 170 (1940); *Palmer v. State*, 93 Okl.Cr. 357, 228 P.2d 391 (1951). In accordance with this intent, the testimony of one accomplice cannot be corroborated by the testimony of other accomplices. See, e. g., *Wood v. State*, Okl. Cr., 341 P.2d 613 (1959); and, see *Young v. State*, Okl.Cr., 446 P.2d 79 (1968).

■ Before deciding this assignment of error, we note that Instruction No. 10, regarding Stokes, was improper under the facts of this case. In numerous decisions, this Court consistently has held that if a witness is clearly shown to be an accomplice as a matter of law, the trial court must instruct the jury that the witness is an accomplice and this his testimony must be corroborated. *Williams v. State*, Okl.Cr., 518 P.2d 322 (1974); *Allen v. State*, Okl.Cr., 522 P.2d 243 (1974). It is only where the facts of a case are reasonably susceptible to alternative findings that the witness is or is not an accomplice that the issue becomes one of fact requiring submission to the jury under the appropriate instruction. *McCormick v. State*, Okl.Cr., 464 P.2d 942 (1969); cert. denied 397 U.S. 934, 90 S.Ct. 943, 25 L.Ed.2d 115 (1970).

■ By his own admission Stokes clearly was an accomplice in the robbery. Under these circumstances the proper instruction, which was not requested by defense counsel, is similar to the one given [1] in *Young v. State*, supra, 446 P.2d at 83. Failure to request the instruction at law was a waiver by the co-defendants of their right to it and an election to allow the jury to decide Stokes' status as an accomplice as a question of fact under the proper instruction

---

1. " 'Instruction No. 7

" 'You are instructed that under all the evidence in this case that the witnesses Wilford Dion Moore and Joe Ray Howell are accomplices, and for that reason you cannot convict the defendant upon the testimony of

them, or either of them, unless you find in the case that they have been corroborated by other evidence in the case, independent of theirs, which tends to connect the defendant with the alleged commission of the crime charged.' "

here given. We will decide this assignment of error in light of Instruction No. 10 as given.

■ The first issue we must address is whether Ketchum was an accomplice within the meaning of 22 O.S.1971, § 742, supra. To be an accomplice the actions of the witness must put him within the scope of 21 O.S.1971, § 172, which provides:

"All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals."

This Court consistently has held that if under all the facts in the case the conduct of the witness is such that he could be *indicted* for the offense with which the defendant stands accused, the witness is an accomplice. *Wood v. State*, supra. See, *Mayes v. State*, 11 Okl.Cr. 61, 142 P. 1049 (1914), and *Motsenbocker v. State*, 29 Okl.Cr. 305, 233 P. 487 (1925). Even if the evidence raises a reasonable doubt as to whether or not the witness is an accomplice, allowing the jury to decide the issue as a question of fact, the State must corroborate his testimony. Compare *Smith v. State*, 27 Okl.Cr. 414, 228 P. 523 (1924), and *Wood v. State*, supra, with *McCormick v. State*, supra.

■ A comparison of the facts in the case at bar with those of previous cases before this Court leads us to conclude that Ketchum was an accomplice as a matter of law, which made it incumbent upon the trial court to include him in Instruction No. 10 *if* Ketchum's testimony was necessary to corroborate Stokes' testimony. In *Wood v. State*, supra, the defendant was convicted of burglary solely on the testimony of two admitted accomplices and one alleged accessory.[2] The defendant and the three witnesses were riding in a car when it was

decided to burglarize a house. The alleged accessory, who was not driving the car, stated that he " 'didn't want anything to do with it [the burglary].' " *Id.* at 614. He remained in the car with another witness while the defendant and the third witness actually committed the crime. The alleged accessory subsequently rode with the others into the country and helped dispose of the loot. The alleged accessory, who was not charged, was used by the State to corroborate the testimony of the two witnesses-accomplices, one of whom had been convicted of the crime while the other had been charged but not tried.

In reversing the defendant's conviction, this Court found the facts in the case clearly established that the witness was an accomplice—i. e., indictable—for the offense with which the defendant was charged. The reversal was required because the other evidence in the case was insufficient to corroborate the testimony of the three accomplices. See, *Wood v. State*, supra, 341 P.2d at 616.

In *Young v. State*, supra, the trial court incorrectly instructed the jury that the witness was an accomplice. This Court held the witness to be an accessory, not an accomplice, because although he was present when the robbery was planned and when the proceeds were divided, the witness did not participate in the robbery nor "*share in the division of the proceeds from such robbery,* . . ." (Emphasis added) *Id.* at 83. We found the error in giving the instruction had enured to the benefit of the defendant and was harmless, but reversed the case on other grounds.

In *Hair v. State*, Okl.Cr., 294 P.2d 846 (1956), the witness and the defendant conspired to commit larceny, but the defendant subsequently decided not to participate in the crime. The witness took the property

---

2. Title 21 O.S.1971, § 173, provides:

"All persons who, after the commission of any felony, conceal or aid the offender, with knowledge that he has committed a felony, and with intent that he may avoid or escape from arrest, trial, conviction, or punishment, are accessories."

In Oklahoma, an accessory is not an accomplice. The testimony of an accessory is sufficient to corroborate that of an accomplice. Cf. *Edmondson v. State*, Okl.Cr., 532 P.2d 81 (1975) (an accessory's testimony not requiring corroboration).

(a check protector and checkbook), went to the defendant's house, awakened him, and the two drove to a secluded spot where they used the items to create a false check, which they cashed. In reversing the defendant's conviction for receiving stolen property, this Court found the defendant was a principal to the larceny of the witness.

By his own admission in the case at bar, Ketchum was present when accomplice Stokes and Cook discussed the robbery in his home. He knew they were going to meet a black man and a white woman to commit the crime. Immediately after the robbery, the four participants returned to Ketchum's home. Ketchum had his wife and children go into another room while the proceeds of the robbery were divided in his presence. He helped hide property taken during the robbery; he received some of the proceeds from the robbery;[3] and, he subsequently returned to the place where the property from the robbery was hidden to help retrieve more proceeds from inside it.

Even though the State contends that Ketchum is, at most, an accessory under 21 O.S.1971, § 173,[4] this Court disagrees. We find that evidence of Ketchum's conduct would not only support an indictment for the crime with which the co-defendants are charged, but also would support a conviction for the crime had Ketchum been charged and tried.

Therefore, this Court finds as a matter of law that Ketchum was an accomplice whose testimony cannot corroborate the testimony of accomplice Stokes. But this finding, by itself, is not sufficient to require a reversal of the convictions herein appealed. If there is sufficient evidence, either direct or circumstantial, in the case at bar to corroborate either the testimony of Stokes or Ket-

chum or both as to the co-defendants' involvement, then either the conviction of defendant Roe or of defendant Howard, or both, will stand. See, *Wood v. State*, supra.

■ Corroborative evidence must of itself, without aid of testimony from the accomplice, tend to link a defendant in some manner to the commission of the offense charged. It is not sufficient if the independent evidence is consistent with the State's theory of the case, but requires any of the accomplice's testimony to form the link between the defendant and the crime. Evidence which falls short of establishing the defendant's guilt is sufficient, provided it tends to connect him to the crime, and not simply with its perpetrators. Slight evidence which merely tends to raise a suspicion of guilt is not sufficient. *Kirk v. State*, 10 Okl.Cr. 281, 135 P. 1156 (1913) and *Rider v. State*, Okl.Cr., 494 P.2d 347 (1972).

■ In the State's case against defendant Roe, there is sufficient direct evidence to link her to the commission of the crime, corroborating accomplice Stokes' testimony. Defendant Roe was identified by Mrs. Strother as the woman who was at her door immediately before and at the commencement of the crime. The testimony of the victim provides the independent link sufficient to corroborate the testimony of accomplice Stokes. The testimonial evidence is sufficient to support defendant Roe's conviction.

■ Finally, we must decide if the trial court's failure to include Ketchum in Instruction No. 10 is sufficient to warrant a reversal of defendant Roe's conviction. A careful review of the record establishes that the testimony of Kethum was immaterial to the State's case against defendant Roe. Ketchum was unable to identify defendant Roe. His testimony did not supply an independent link sufficient to corroborate the

---

**3.** During cross-examination the following exchange between Ketchum and defense counsel occurred:

"Q. In other words, you got four hundred dollars out of it?
"A. Yeah, but if they got all that money they was supposed to have got, I would say I didn't get very much.

"Q. They cheated you, didn't they?
"A. It sounded like they would have, yeah."
(Tr. 53)

**4.** See n. 2, supra.

testimony of accomplice Stokes as to defendant Roe's involvement in the robbery. Ketchum's testimony was damaging only to Defendant Howard, whom he identified. Therefore, we find it was not error for the trial court to refuse the requested instruction as to defendant Roe.

 In the State's case against defendant Howard, however, we find the independent evidence is insufficient to corroborate the testimony of accomplice Stokes. The victim could not identify defendant Howard, who denied any knowledge of the robbery, and who denied knowing either Stokes or Ketchum. He offers as an alibi that he was not in Oklahoma when the robbery occurred; and, except for the testimonies of accomplices Stokes and Ketchum, which is uncorroborated, the State offers no evidence to refute defendant Howard's story.

Therefore, we find the only evidence linking defendant Howard to the crime requires, but fatally lacks, corroboration. Failure to include Ketchum in Instruction No. 10 upon request of defense counsel was error, which was properly preserved by a timely objection. The conviction of defendant Howard is hereby reversed and his case remanded to the court below for further proceedings not inconsistent with this opinion.

## II

Defendant Roe's second assignment of error is unprecedented in Oklahoma. The trial court, it is argued, abused its discretion by refusing defendant Roe a trial separate from that of defendant Howard. This Court is urged to find a form of collateral estoppel and constructive severance in the legal proceedings leading up to the trial in the case at bar.

Prior to the instant trial, defendant Roe twice was tried alone for her part in the robbery of Mrs. Strother. During the first trial Judge Jack Brock declared a mistrial after a juror fell asleep during testimony of the victim. During the second trial Judge Joseph Wheeler declared a mistrial when the jury was unable to reach a verdict.

It is argued that the two previous trials constituted a severance by the State, which was approved by Judges Brock and Wheeler. The theory of counsel is that the "spirit" of collateral estoppel required the trial court in the instant case to find constructive severance of the charges against defendant Roe from those against anyone else connected with the crime.

 Collateral estoppel is a legal concept which prevents multiple litigation between the same parties of an ultimate issue of fact that already has been determined by a valid and final judgment. *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). In that case, three or four masked gunmen robbed six men engaged in a poker game. Ashe was found innocent due to insufficient evidence on a charge of robbing one of the poker players. He subsequently was tried and convicted of the robbery of another of the players. The United States Supreme Court set aside Ashe's conviction, holding that the prior acquittal had resolved the only issue in dispute, which was whether Ashe had been one of the robbers.

This Court has granted a writ of prohibition on a collateral estoppel theory to prevent the prosecution of a murder charge against a defendant who had been found not guilty by reason of insanity in a related murder case. *Munn v. Pate*, Okl.Cr., 489 P.2d 534 (1971). Accord, *Hawk v. Mills*, Okl.Cr., 476 P.2d 86 (1970). But we have refused to apply collateral estoppel where there has not been a previous determination by the trier of fact of the ultimate issue of fact in question. *Wilds v. State*, Okl.Cr., 545 P.2d 779 (1976).

 Even a cursory examination of the case law establishes that collateral estoppel deals with *substantive* legal issues. A mistrial is a *procedural* remedy that terminates legal proceedings prior to a final determination of the substantive legal issues when the trial court makes the collateral determination *as a matter of law* that the substantive rights of the defendant have been unconstitutionally prejudiced. Once a mistrial has been declared, all questions of fact re-

main to be decided and may be litigated until a final, valid determination has been reached. But see, *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); and *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976).

In the case at bar, the record clearly establishes that no question of ultimate fact had been decided in either of the previous trials; neither had Judge Brock nor Judge Wheeler decided the issue of severance as a matter of law prior to the declaration of mistrial. While our conclusion might be different if either judge had granted a severance prior to a mistrial, this Court cannot find a constructive severance through events in the prior trials where the issue was neither raised nor decided by the trial court; nor can we find any facts in the instant case sufficient for this Court to rule as a matter of law that the trial court abused its discretion in denying defendant Roe's motion to sever. Therefore, we find this assignment of error to be without merit.

### III

Defendant Roe's final assignment of error is that the trial court erred in refusing to give the jury an instruction on circumstantial evidence. After a careful review of the record we find this contention to be without merit. The testimony of the victim is direct evidence placing defendant Roe at the scene of the robbery. The testimony of Hiawatha Stokes is direct evidence of defendant Roe's participation in the robbery. While there is some circumstantial evidence in the State's case, there is sufficient direct evidence of each element of the offense charged to support a conviction. The jury did not have to rely upon the circumstantial evidence to draw an inference or presumption to any element of the offense. Compare *Turvey v. State*, 95 Okl.Cr. 418, 247 P.2d 304 (1952), with *Nichols v. State*, Okl.Cr., 418 P.2d 77 (1966). Since the circumstantial evidence in this case was cumulative, it was not error for the trial court to refuse the defendant's requested instruction on circumstantial evidence.

For all of the above and foregoing reasons, the judgment and sentence of defendant Roe is, accordingly, AFFIRMED. The judgment and sentence of defendant Howard is REVERSED and REMANDED to the District Court below for further proceedings not inconsistent with this opinion.

BUSSEY, P. J., and BLISS, J., concur.