DeROY H. BURNS v. STATE.

No. A-9859. Sept. 10, 1941.
(117 P. 2d 155.)

434

 

R. Place Montgomery and Hughes & Hughes, all of Hobart, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, J. DeRoy Burns, Bryan B. Burns, and Charles Merchant were charged by an indictment presented and filed by a grand jury of Kiowa county with the crime of conspiracy to defraud the state; a severance was granted; the defendant, DeRoy Burns, was tried, convicted and sentenced to serve two years in the State Penitentiary and to pay a $3,500 fine, from which judgment and sentence an appeal has been taken to this court.

It is first contended by the defendant that the court erred in overruling his demurrer to the indictment for the reason that the indictment alleges the consummation of certain overt acts which amount to felonies, and that under the doctrine of merger the crime of conspiracy has been merged in the overt act, and that the defendant, if indictable at all, should be indicted for the felony described under each of the overt acts alleged in the indictment.

It is not necessary to set forth the indictment in this opinion. The same is lengthy and in substance alleges that the three defendants conspired together to defraud

the State of Oklahoma of money by representing that certain persons therein named were employed and actually engaged in work upon the public highways of the state in Kiowa county.

Several overt acts were alleged in the indictment, wherein the defendants were alleged to have submitted pay roll claims with a person's name signed thereon who did not work and did fraudulently receive from the state certain state highway warrants in a stated amount, which warrants were endorsed by the defendants, transmitted to the State Auditor, and were paid out of the public funds of the State of Oklahoma. These warrants are fully described and the acts concerning the procurement of the money upon them are detailed at length in the indictment.

The prosecution hereinabove is based upon section 1963, O. S. 1931, 21 Okla. St. Ann. § 424, which provides:

"If two or more persons conspire either to commit any offense against the State of Oklahoma, or to defraud the State of Oklahoma in any manner or for any purpose, and if one or more of such parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable to a penalty of not more than ten thousand dollars ($10,000.00) or to imprisonment for not more than two years or to both fine and imprisonment in the discretion of the court or jury."

Under the doctrine of merger where the overt acts pleaded in the indictment amount to completed, separate crimes, it is held that the conspiracy merged in the completed crime. We do not think that the case of Taylor v. State, 38 Okla. Cr. 350, 261 P. 978, cited by counsel, is an authority to sustain this proposition, although the author of the dissenting opinion makes certain statements in his opinion which tend to show that the majority opinion was predicated upon the theory of merger. However,

the opinion of the court merely held that the conspiracy statute would not apply to violations of the intoxicating liquor laws because of certain constitutional provisions relating to said laws.

This court has never definitely passed upon the question, and with the exception of the case of Taylor v. State, supra, no authorities are cited by the defendant to sustain his position.

The general rule which has been adopted in the states which have had occasion to discuss this question, and the one which we think is in accordance with sound public policy and which will promote the ends of justice and be conducive to the efficient enforcement of the criminal law, is as stated in the case of People v. Tavormina, 257 N. Y. 84, 177 N. E. 317, A. L. R. 1405, in which it is stated:

"The crime of conspiracy does not merge in the felonies described as overt acts in the indictment, where the conspiracy is a crime and not an essential part of the felonies to accomplish which it was entered into."

"A conspiracy to commit a felony constitutes an independent crime, complete in itself and distinct from the felony contemplated."

"The fact that indictment for conspiracy alleges overt acts constituting a felony, or that the evidence discloses that the conspiracy was executed by the commission of a felony, does not render the indictment demurrable or prevent a conviction for conspiracy."

There is a lengthy annotation at the conclusion of this case in which authorities are cited from many jurisdictions sustaining this view. 75 A. L. R., supra.

The next assignment of error is that the verdict is not sustained by sufficient evidence, in that there is no proper corroboration of the testimony of the admitted accomplice, Clarence Jackson.

Several witnesses testified on behalf of the state. No evidence was introduced in behalf of the defendant.

To better enable the court to make a proper discussion of this assignment of error, a short statement of the evidence is presented.

Harold Jones testified that he was a music teacher at Indiahoma; that he was employed by DeRoy Burns to play a trumpet in the hillbilly band in the defendant's compaign for State Senator, beginning about May 20, 1938. That Cecil Wilhite, Troy Wilhite, and Coy Daily were the other members of the band; that he had never at any time been employed on the state highways, and did not receive nor endorse state's exhibit No. 5, being a warrant in the sum of $10.50, dated June 21, 1938, payable to Harold Jones; nor state's exhibit No. 8, being a warrant in the sum of $64.40, payable to Harold Jones, dated July 21, 1938'; nor state's exhibit No. 2, being a warrant in the sum of $42, dated August 26, 1938, and payable to Harold Jones; nor state's exhibit No. 15, being a warrant in the sum of $72, dated September 16, 1938, and payable to Harold Jones.

On cross-examination witness stated that he was generally known as 'Chink" Jones; that defendant paid him in cash for his services, and that he did not know that his name was being carried on the highway pay roll.

On redirect examination the witness stated that on two occasions prior to 1938 the defendant, DeRoy Burns, had delivered two State of Oklahoma highway warrants, which were made payable to Harold Jones, to him.

Clarence Jackson testified that for four years prior to 1939 he was employed as truck foreman with supervision over certain projects of the State Highway Department in Kiowa county; that Charles Merchant was foreman

and timekeeper on the mud-jack project, east of Snyder; that during the Marland compaign, in 1936, the name of Harold Jones was carried on the highway pay roll at the direction of the defendant, although Harold Jones did not work at any time on the highway; that in both 1936 and 1938 Harold Jones was employed to play in the hillbilly band; that warrants payable to Harold Jones were delivered to DeRoy Burns or his brother, Bryan Burns; that when DeRoy Burns had the witness place Harold Jones' name on the pay roll, the defendant told him it was all right; that one of the warrants was delivered to the defendant; that four warrants, including state's exhibits Nos. 1, 2, 3, and 4, were delivered to Bryan Burns at the same time, and that at the request of Bryan Burns, the witness endorsed the name of J. W. Fagg on state's exhibit No. 1; Charles Wilhite on state's exhibit No. 3; that Bryan Burns endorsed the name of Harold Jones on state's exhibit No. 2; that the defendant would give him the names of fictitious persons to place on the pay roll for the purpose of securing state highway warrants to pay campaign expenses for the defendant in his race for State Senator. That about the first of October, 1938, Bryan Burns came to witness' home with four warrants on which the names of the payees had already been endorsed; that Bryan Burns there stated that DeRoy had gotten them "in a hell of a jam," and that Bryan wanted the witness to take the warrants and get them cashed, as he was afraid to cash them, since he and DeRoy were being investigated. One of said warrants was state's exhibit No. 15, payable to Harold Jones in the sum of $72. Witness took the warrants to Bob Reid at Altus, got the money, and brought it back and gave it to Bryan Burns; that in the early part of 1939, when an investigation concerning these unlawful activities was started, the defendant and Bryan Burns

talked to him several times and wanted him to take the rap by himself, and that he refused, since he hadn't received a dime out of it; that later he and the defendant talked together, and the defendant stated: "You are the only guy between me and the penitentiary, and I think you ought to leave until I can get it straightened out," that the defendant furnished him with money, and at their request the witness went to Fort Worth. Later defendant telegraphed him and wanted him to go farther, and sent him $60 in currency by his son, Eugene Jackson. Witness wrote the defendant for more money while in California, and defendant sent him $50, together with a typewritten note, introduced in evidence, instructing witness to meet defendant in the Southland Hotel in Dallas. Witness met defendant at the hotel, and defendant proposed paying the witness monthly and for him to stay until the investigation was completed. That defendant later sent witness $50 by his wife; that witness went to Paris, Tex., then to Texarkana; later to Hot Springs, and then to Antlers, Okla., before talking to a lawyer at Antlers and deciding to come on into Hobart and testify before the grand jury.

The witness further testified that he and defendant went to Bob Reid's office at Altus, where DeRoy gave Reid a check for over $300. Bob Reid had loaned money on the pay roll, which included some of the fictitious names, and that there had been a shortage which DeRoy was making up. A day or two later, the defendant gave witness the cash and had him go to the Planters State Bank at Mountain Park and take up the check which defendant had given Bob Reid.

The witness further identified twelve fictitious names which were placed on the highway pay roll in the summer of 1938 at the direction of the defendant. That money was borrowed from Bob Reid on this pay roll on the time

of these fictitious persons, and the money brought back by the witness and given to defendants.

Eugene Jackson, son of Clarence Jackson, testified that he worked on the state highway a part of the summer of 1938; that after his father had left, in 1939, the defendant and Bryan Burns talked to him, and each gave him money to deliver to his father. The defendant gave the witness the address of Clarence Jackson in Fort Worth. Bryan Burns took the witness to the Texas line, where he caught the bus to Fort Worth; that later, when his father was at Antlers, DeRoy and Bryan gave him money to pay his way to Antlers.

Lillian Jackson, wife of Clarence Jackson, testified that she delivered $50 at the request of Bryan Burns to Clarence Jackson at the Southland Hotel in Dallas; that the defendant gave her the address in Dallas where she could find her husband. She detailed the conversation which she heard between her husband and Bryan Burns, which is substantially the same as related by Clarence Jackson.

Othol Edgar, clerk in the State Highway Department office at Altus, identified certain time sheets and pay rolls in connection with the project east of Snyder, described as the mud-jack crew, which time sheets and pay rolls were admitted in evidence and showed the names of Harold Jones, Homer Smith, and other fictitious persons being carried thereon.

R. H. Reid testified concerning the visit of the witness Clarence Jackson and defendant DeRoy Burns to his office in Altus on July 25, 1938, at which time the defendant's check, described in state's exhibit No. 24, being in the sum of $347.95, was given him. That this amount was the difference which the witness had coming to him be-

tween the amount he had loaned on the time of the workmen and the amount of warrants which he had received and cashed.

Bruce Braddock, cashier of the Altus National Bank, testified to the handling, on July 25, 1938, of a check drawn by DeRoy Burns on the Planters State Bank of Mountain Park, payable to R. H. Reid, and of forwarding said check to the First National Bank & Trust Company of Oklahoma City.

T. D. Elder, assistant cashier of the First National Bank of Oklahoma City, testified to the handling of the DeRoy Burns check, state's exhibit No. 24, and identified a photographic copy of said check, which the defendant, through his counsel, admitted was signed by the defendant.

T. C. Huckaby testified that he was cashier of the Planters State Bank of Mountain Park; that defendant mentioned he had a check coming in and wanted to take it up at the window instead of having it run on his account. That the Altus bank had called about the check, and were advised the check would be all right. That no record was ever made at his bank of this check.

Ray S. Moore testified that at the request of Bryan Burns he cashed certain warrants at the bank at Snyder, and delivered the money to Bryan Burns. Some of these warrants were to Harold Jones, Homer Smith, and Charles Wilhite. He identified state warrants totaling $475.40, which he cashed on July 26, 1938. (It was the theory of the state that these warrants which were cashed by Moore on the next day after defendant had given the $347.95 check to Bob Reid at Altus were used to take up this check at the bank at Mountain Park.)

It can be readily seen from the short summary of the evidence hereinabove stated that every witness used by

the state testified to some important point which corroborated the story of this conspiracy related by the witness Clarence Jackson. The testimony of Harold Jones, Lillian Jackson, Eugene Jackson, or Bob Reid would have each, by itself, been sufficient to have corroborated the testimony of Clarence Jackson. It is not necessary to cite authorities nor discuss this assignment of error at length, as it does not have sufficient merit to warrant such discussion. If believed by the jury, the evidence of the guilt of the defendant was overwhelming and amply sufficient to sustain conviction.

It is argued by defendant that the testimony shows that Eugene Jackson, Mrs. Clarence Jackson (Lillian Jackson), and Bob Reid are each accomplices, and that one accomplice cannot corroborate another. This rule of law is correct, but the conclusion that these witnesses are accomplices is contrary to the evidence.

It is next contended that the trial court committed reversible error in the giving of certain instructions, excepted to by the defendant, and in its refusal to give certain instructions requested by the defendant.

The first instruction complained of is as follows:

"If two or more persons conspire to commit an offense, the act of any one of the parties to the conspiracy, done in furtherance of the common design and to effect the object thereof, is the act of all, although not present when said act was done. In other words, every person who enters into a common design is in law held to be a party to every act which may be done by any of the others in furtherance of the common design. And in this connection you are instructed that when a conspiracy is shown to exist, the least degree of concert or collusion between the parties to an illegal transaction makes the act of one the act of all. After the conspiracy has been formed, then all acts, statements, and declarations by one of the conspirators, having

reference to the common design or purpose of the conspirators is admissible as against each and every one of the parties to the conspiracy, and in contemplation of law is the act of all."

The defendant complains that this instruction is faulty for the reason that it does not limit the admissibility of acts and declarations of the coconspirators to the continuance of the conspiracy or advise the jury that after the conspiracy is consummated, that acts and declarations of one coconspirator are not admissible against another.

The instruction clearly states the law. The contention of counsel is based upon a question concerning the admissibility of evidence and not concerning a statement of law to be given to the jury in the court's instructions. It is the duty of the court upon proper objection by defendant's counsel to exclude any evidence of acts or declarations occurring after the conspiracy has been fully consummated or abandoned. The authorities in defendant's brief sustain this point. However, was are unable to find any evidence in the record which would be the basis for such an attack, except possibly the evidence as to the flight of the witness Clarence Jackson, and in this connection we note that this evidence was admitted without objection, and shows that the defendant and Bryan Burns acted together in persuading the witness to flee. The other evidence in the case concerning statements made by Bryan Burns in connection with the cashing of certain of the warrants shows they were made during the actual consummation of the conspiracy, and accordingly are admissible in evidence.

It is well settled that where two or more persons have conspired together to commit an offense, any statement made by one of such persons in pursuance of such conspiracy is admissible in evidence against all of his

coconspirators. Smith v. State, 19 Okla. Cr. 386, 200 P. 553; Bowes v. State, 8 Okla. Cr. 277, 127 P. 883; Hollingshead v. State, 21 Okla. Cr. 306, 207 P. 104; Crawford v. State, 35 Okla. Cr. 135, 248 P. 880.

It is equally well settled that the existence of a conspiracy must first be proved before a declaration of one not on trial is admissible against the defendant; but if there is competent evidence, however slight, of the conspiracy, the acts and declarations of coconspirator made during the consummation of the conspiracy may be admitted in evidence against the defendant.

Counsel also attacks instruction 4½, which provides:

"A conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

"An accomplice is a person who participates with another in the commission of an offense.

"In this case the witness, Clarence Jackson, who has testified herein, is an admitted accomplice, and for that reason you cannot convict the defendant upon the testimony of the said witness, Clarence Jackson, unless you find that other evidence in the case than the testimony of the witness Clarence Jackson connects the defendant, DeRoy H. Burns, with the commission of the offense.

"You are further instructed that such corroborating evidence may be circumstantial, and it is not necessary that the required corroborative evidence cover every material point testified to by the said Clarence Jackson, and it is sufficient if you find that the evidence of Clarence Jackson, is corroborated in some material point which tends to connect the defendant, DeRoy H. Burns, with the commission of the offense."

Counsel complains of this instruction for the reason it fails to advise the jury that one accomplice cannot corroborate another, and for the reason that the court by calling Clarence Jackson an accomplice inferentially informed the jury that all of the other witnesses are not.

We have carefully read this instruction, and do not think it is susceptible of the construction which counsel places upon it. It is true that one accomplice cannot corroborate another so as to authorize a conviction on the testimony of the two accomplices alone. Stinnett v. State, 58 Okla. Cr. 229, 52 P. 2d 113; Yeargain v. State, 57 Okla. Cr. 136, 45 P. 2d 1113; Hanna v. State, 30 Okla. Cr. 354, 235 P. 928.

In the case of Bryan Burns v. State, 72 Okla. Cr. 409, 117 P. 2d 144, this date decided, which involved most of the facts herein proved, it was contended that the court erred in refusing to instruct the jury as a matter of law that Clarence Jackson was an accomplice. However, that case involved the crime of uttering a forged instrument and this case involves the crimes of conspiracy to defraud the state; and under the undisputed facts of this case, Clarence Jackson as a matter of law is an accomplice of the defendant, and the court correctly so stated in said instruction.

The defendant, two days after the conclusion of the trial, presented to the court separate, requested instructions, in which instructions it is requested that the court instruct the jury as a matter of law that Eugene Jackson and R. H. Reid, together with Clarence Jackson, were as a matter of law accomplices.

In addition to the fact that the requested instructions were presented too late for consideration of the court, this contention is untenable for the reason that there is

not sufficient evidence in the record to have justified the court in concluding that Eugene Jackson and R. H. Reid were accomplices.

Under the testimony of these two witnesses, they certainly were not accomplices, but acted entirely innocent in their transactions, except that Eugene Jackson admitted that he learned while acting as timekeeper on one of the projects that some fictitious names had been placed on the pay roll by other parties. He secured this information, however, sometime after it had been done and was not a party to the fraud.

The defendant offered no evidence in his own behalf; and since the testimony of the witnesses Reid and Eugene Jackson did not show that they were accomplices, it would have been a gross mistake of law for the court to have given these requested instructions.

Lastly it is contended that the court erred in refusing to grant defendant a new trial on the grounds of newly discovered evidence.

This contention was first presented to the trial court several weeks after sentence had been pronounced against the defendant. Attached to the motion are certain affidavits of parties residing in California who claim to have been present at a conversation on the streets of Mountain Park when Clarence Jackson and the defendant DeRoy Burns were talking; and Clarence Jackson told DeRoy Burns that his and his son Eugene's highway warrants were tied up in the office of Bob Reid at Altus, that the grocery man was about to cut off his groceries, and he wanted Burns to lend him the money to release such warrants, which amounted to several hundred dollars; that Burns gave Jackson a check signed and drawn in blank on the Planters State Bank of Mountain Park; that after

receiving the check, Jackson, in company with the affiants, the defendant not being present, went to Altus to the office of Bob Reid, where the blank check was filled in by Reid for the necessary amount and delivered in exchange for certain warrants. The affidavits will not be set forth herein because they are lengthy, and it takes only a casual reading of the same to see that they are falsely made.

Assuming, however, that the affidavits speak the truth, the facts set forth therein cannot be newly discovered evidence for the defendant must certainly have been aware of this conversation and of the parties who were present and who could testify thereto, prior to the time of the trial. The facts in this situation are comparable to the facts in Donahue v. State, 38 Okla. Cr. 87, 259 P. 179, 180, in which it is stated:

"It is next argued that the court erred in denying defendant a new trial on account of newly discovered evidence. The affidavits of several witnesses are attached setting out in substance that defendant was not at his home at the time charged. Some of the witnesses claim to have been with the defendant at the time in another part of the county. Some claim they were at his home at the time. This is not newly discovered evidence. Defendant certainly knew at the trial who were with him at the time charged, and if he did not know who was at his home on that occasion could easily have ascertained. Where defendant fails to show that he used due diligence to procure testimony in the first instance, his motion is properly overruled. Calvert v. State, 10 Okla. Cr. 185, 135 P. 737."

It is apparent that if such alleged conversation had occurred, the defendant would have had his counsel question Clarence Jackson concerning the same, and would have further questioned Reid and Jackson concerning the transaction in Reid's office where the affiants claim to

have been present, and where it was claimed by affiants the defendant was not present. In both affidavits, it is sworn that DeRoy Burns took a blank check, drawn on the Planters State Bank at Mountain Park, and signed it, and gave it to Jackson to take to Altus. Whoever prepared the affidavits for these parties to sign overlooked reading the check which was admitted in evidence, as the check shows on its face that it was a check on the National Bank of Commerce of Altus, Okla. the name of the bank and the town being changed by the party who prepared the check to the Planters State Bank at Mountain Park, but the check form was on the bank at Altus.

The affidavits state that Jackson said that his warrants and those of his son Eugene, totaling several hundred dollars, were tied up with Reid. This was on July 25, 1938, and was for the June time. Upon an examination of the June pay roll, it is disclosed that Clarence Jackson drew $126 for the month, while his son, Eugene Jackson, was not even on the pay roll. It is not necessary to discuss these affidavits further, as these examples are sufficient to show to this court that they were made without regard for the truth. In addition to this, these affidavits are not sufficient upon their face to show diligence.

We have carefully examined the record of evidence and the briefs filed in this case, and have given the defendant every inference in his favor which the law allows and justice demands. This case is much stronger than that proved by the state in the prosecution of the brother of this defendant in the case of Bryan Burns v. State, supra.

Here the guilt of the defendant is so overwhelming that it is apparent that no reasonable explanation of the evidence offered by the state could be made, and therefore none was attempted by the defendant. The defendant in

planning this conspiracy had evidently adopted the view that because of his position as State Senator he had secured a license to prey upon the public treasury.

Those in public positions should maintain themselves with scrupulous fidelity to their cause. There is no place in our public affairs for officials without honor and integrity. The acts of this one dishonest public official cast reflection in the public's mind upon the honorable body of which he happened to be a member. It is regrettable that this defendant has seen fit to perform the acts which have been so conclusively proven. He not only committed a crime himself in pursuance of these acts, but because of the influential position which he occupied, he persuaded other men who were responsible to him for their jobs to likewise violate the laws of the state, and aid him in his fraudulent plan.

It is commendable that the jurors of Kiowa county, when these unlawful acts were called to their attention, acted promptly and fairly in assessing punishment for the offenders and stamping out these practices in their county.

Under the record as we view it, the defendant is probably fortunate that the punishment assessed was not more severe.

The judgment of the district court of Kiowa county is accordingly affirmed.

BAREFOOT, P. J., and DOYLE, J., concur.