**Bob SPERRY, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–75–273.**

Court of Criminal Appeals of Oklahoma.

Dec. 9, 1975.

Rehearing Denied Jan. 12, 1976.

Forest N. Simon, O. B. Martin, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Bob Sperry, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF–74–2162, for the offense of Grand Larceny, in violation of 21 O.S.1971, § 1701. His punishment was fixed at eighteen (18) months' imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

The State called as its first witness Walter Tim Guyer, who on Sunday, June 30, 1974, at approximately 12:30 a. m., went to the home of the defendant, Bob Sperry. The witness testified that he went to the defendant's home for the purpose of watching television. During the course of the evening the witness mentioned to the defendant that he was short of money because of the strike in which he and his co-workers were presently engaged. The witness next mentioned to the defendant that he had seen some stereos at a TG&Y store in Edmond, Oklahoma. When the witness mentioned the stereos to the defendant, the defendant told the witness that they could get them without much difficulty. At approximately 12:30 p. m. on Sunday, June 30, 1974, the witness and the defendant got into the defendant's black Ford pickup and drove around before arriving at the TG&Y store at approximately 1:30 p. m. The witness further testified that while he and the defendant were driving around there had been some discussion as to how they might be able to steal the stereos from the TG&Y store. The witness stated the defendant parked his black Ford pickup truck at the west end of the TG&Y store by the entrance to the automotive section. Both the witness and the defendant entered the store through that door and proceeded to the music department where they looked at the stereos and noticed a sales lady. The witness and the defendant then went to the restaurant in the store where they both drank a Coke while they discussed the manner in which they would steal the stereos from the store. The witness testified that the defendant told him that he would distract the sales lady while he, the witness, picked up one or two stereos, carried them back through the automotive entrance and placed them in the front seat of the pickup. They both then proceeded to carry out this plan, however, the witness stated he was stopped by the manager and assistant manager of the store who asked him for a receipt for the two stereos. When he told them he did not have a receipt because his father was still in the store paying for the stereos, the assistant manager asked the witness to go back inside the store, find his father, and get the sales receipt. The witness testified that he was confused at this point, went back inside the store and walked around until he found the defendant. Upon finding the defendant he told him about the situation that had arisen, and defendant told the witness to leave through the door at the opposite end of the store. The witness stated that as he was leaving the store the assistant manager and the manager caught him and took him to the back of the store. The manager then called the police. When the police arrived the witness told the police that he had stolen the stereos because he was short of money due to the strike. He also told them that his father was not in the store and that his story had been a lie. The witness further testified that he had stolen only one stereo because one of the two boxes which he removed from the store did not contain a stereo.

The State's next witness was Adam Hasenfratz who was on duty at the TG&Y store in question on June 30, 1974, in the capacity of assistant manager. He testified that at approximately 1:30 p. m. that afternoon he was standing with the manager when they observed Walter Tim Guyer, the State's first witness, pick up two stereo boxes, walk out the automotive department door and place them in a black pickup. The witness followed Guyer out of the store and asked him for a sales slip. Guy-

er informed the witness that he did not have a sales slip with him, but his father was getting one from the stereo department. The witness then informed Guyer that he could not leave with the stereos until he got the receipt, and he further instructed Guyer to go into the store and find his father. The manager, Larry McKisson, who had observed the theft with the witness, told the witness to stay there and watch the pickup while Guyer was in the store looking for his father. McKisson soon returned and told the witness to remove the stereos from the pickup because he was not able to confirm the fact that they had been paid for. After taking the stereos from the pickup, the witness remained by the automotive door until he observed the defendant get into the pickup and drive away. The witness then went to the storeroom where Guyer was being questioned by police.

The State's next witness was Larry McKisson, manager of the TG&Y store where the alleged larceny occurred. The witness testified, as did the assistant manager, that at approximately 1:30 p. m. on Sunday afternoon, June 30, 1974, he and the assistant manager observed Walter Tim Guyer pick up two boxes containing stereos and carry them out of the store through the automotive department and place them in the front seat of a black Ford pickup. However, the manager did not go outside with the assistant manager, but rather he informed the assistant manager to stay by the pickup and not allow the stereos to be taken from the premises until he, the manager, had checked in the stereo department to determine whether or not the stereos had, in fact, been paid for. The manager did testify that while Guyer was stealing the stereos the saleslady who was on duty in the stereo department was at that time occupied with other customers. However, the manager did not notice whether the saleslady was waiting on anyone in particular. The witness further testified that when Guyer had informed the assistant manager that his father had the

sales receipts he, the manager, told the assistant manager to request that Guyer go back into the store, find his father and get the receipts. He further testified that when he had confirmed that there were no receipts for the stereos and that the stereos had indeed not been sold he requested that the assistant manager remove the stereos from the pickup but remain by the truck to see who came to drive the truck away. While the assistant manager remained by the truck, the manager testified that he went back into the store to locate Guyer. After a few moments, the manager testified that he found Guyer in the hardware section talking to the defendant. At this time the manager stated that he approached the defendant to ask him some questions. The defendant admitted that the black Ford pickup parked outside the automotive department was his, but he denied that he was the father of Guyer. When the witness told the defendant of the stereo incident, defendant became angry and said that he would not "put up with this kind of stuff," and that he would go and get Guyer's father. The defendant told the witness that both Guyer and Guyer's father had worked for him and that while in his employ they had also stolen from him. During the course of the conversation between the manager and the defendant, Guyer had left the hardware section and gone to a different area of the store. When the manager left the defendant, he went to look for Guyer and found him trying to leave the premises. The witness took Guyer back to the storeroom where he was met by the police.

The defendant was identified by the witness, the manager of the TG&Y store, as a man with one leg who walked on crutches. In reference to this identification, the manager further testified that about two hours after the incident the saleslady in the stereo department told him that at the time of the theft she was waiting on a man with crutches (this description closely resembled the physical appearance of the defendant).

Thereafter the State rested.

The defendant did not take the stand nor offer any evidence in his behalf.

■ The defendant's first assignment of error asserts that he was convicted solely upon uncorroborated testimony of an accomplice. With this contention we cannot agree.

■ Clearly the law in this State is that a conviction cannot be had upon the testimony of an accomplice unless the accomplice's testimony be corroborated as to one material fact, or facts, by independent evidence tending to connect the defendant with the commission of the crime. See, 22 O.S.1971, § 742. After a careful review of all the evidence we find that the accomplice's testimony was corroborated on several material facts. The State's evidence reveals that the defendant was seen conversing with the accomplice at the scene of the crime (the TG&Y store); the defendant admitted ownership of the black Ford pickup in which the stolen stereos were placed; and, a person resembling the defendant was talking to the saleslady at the time the accomplice stole the stereos, which fit the plan to steal the stereos as outlined by the accomplice.

In the case of *Sanders v. State,* Okl.Cr., 341 P.2d 643 (1959), this Court held in the fourth paragraph of the Syllabus as follows:

"Where the sufficiency of the evidence to corroborate an accomplice is challenged, Court of Criminal Appeals will take the strongest view of the corroborating testimony that such testimony will warrant, and, if it can say that there is corroborating evidence tending to connect the defendant with the commission of the offense, it will uphold the verdict."

Also see, *Sizemore v. State,* Okl.Cr., 507 P.2d 1330 (1973); *Nation v. State,* Okl. Cr., 478 P.2d 974 (1971), and, *Hobbs v.*

*State,* Okl.Cr., 435 P.2d 181 (1967). We therefore find this assignment of error to be without merit.

■ Defendant's final assignment of error asserts misconduct of the Assistant District Attorney. The first comment of which the defendant complains was during closing argument wherein the Assistant District Attorney stated:

"Now, and it is uncontradicted. I didn't hear anything from the witness stand saying that they didn't have a Coke together. They didn't say, 'All right, I am going to go over and distract the woman.'" (Tr. 81)

The defendant contends that the comment of the Assistant District Attorney wherein he stated that the evidence is "uncontradicted" was a violation of 22 O.S.1971, § 701, to the fact that the defendant did not take the witness stand.

In the case of *Story v. State,* Okl.Cr., 478 P.2d 929 (1971), this Court held in the first paragraph of the Syllabus that:

"Where a defendant fails to offer any evidence, the prosecutor is not prevented from discussing the evidence against him and to state that such evidence is uncontradicted. Such argument would not be a violation of the statute forbidding comment on the fact the defendant did not testify."

Also see, *Pugh v. State,* Okl.Cr., 528 P.2d 719 (1974).

Based on the above authorities we find no error in the Assistant District Attorney's comment as set forth above.

Defendant cites several other comments of the Assistant District Attorney during closing argument, all of which we have carefully reviewed. However, we cannot say that such comments were wholly improper and unauthorized by the evidence and the facts, and, therefore, did not constitute reversible error. In the case of *Pickens v. State,* Okl.Cr., 450 P.2d 837

(1969), this Court held in the second paragraph of the Syllabus:

"The right of argument contemplates a liberal freedom of speech, and the range of discussion, illustration, and argumentation is wide. Counsel for both the State and defendant have a right to discuss fully from their standpoint the evidence, and the inferences and deductions arising therefrom."

For all the above and foregoing reasons we are, therefore, of the opinion that the judgment and sentence appealed from should be, and the same is hereby *affirmed*.

BLISS, J., concurs.

BRETT, P. J., dissents.