Dorothy Collins **FRYE**, and Richard **Frye, Appellants,**

v.

The **STATE of Oklahoma, Appellee.**

No. F–77–823.

Court of Criminal Appeals of Oklahoma.

Jan. 17, 1980.

600

George Miskovsky, Sr., and John Paul Johnson, Miskovsky, Sullivan & Miskovsky, Oklahoma City, for appellants.

Larry Derryberry, Atty. Gen., Ross N. Lillard, III, Asst. Atty. Gen., for appellee.

## OPINION

CORNISH, Presiding Judge:

The appellants, Dorothy Collins Frye and Richard Frye, hereinafter referred to as Collins and Frye, appeal from a conviction in the District Court, Murray County, Case No. CRF–77–18, for Murder in the First Degree. Punishment for both appellants was set at life imprisonment.

The State's case rested upon evidence that Frye and Collins were having a love affair and successfully contracted for the murder of Collins' husband, Wayne Collins, so they could marry. The conviction of Richard Frye is affirmed, but because of the State's failure to connect Dorothy Collins Frye to the conspiracy to murder, her conviction is reversed.

I

The appellants contend the trial court erred by refusing to grant their motion for change of venue in view of widespread, adverse pretrial publicity. Because the case involved the alleged illicit affair between a minister and a parishioner in a small town, the appellants assert that a circus-like atmosphere prevailed in the courtroom.

A timely motion for change of venue was filed by the appellants. Attached thereto were affidavits of local residents who did not believe the appellants could obtain an impartial jury in Sulphur, Oklahoma. During voir dire the appellants challenged jurors for cause and exercised all their peremptory challenges. The trial court held a separate hearing on the motion and reserved its ruling until completion of the voir dire, during which 24 veniremen were excused for cause, after stating they had formed opinions as to guilt in the case.

The transcript reflects that the members of the jury panel selected were extensively questioned by both counsel for the State and defense, as well as by the court. Though many of them had heard or read of the case, each juror affirmatively stated that he or she could render a verdict based solely upon evidence presented at trial. We do not believe that the statements of those veniremen who indicated that they had formed opinions of guilt and were excused prejudiced those remaining on the panel. Nor do we find that the trial court exceeded its discretion in denying additional peremptory challenges. A review of the record also fails to substantiate the claim that a circus-like atmosphere prevailed during the trial.

It is axiomatic that a granting of a change of venue is within the sound discretion of the trial court, whose ruling will not be disturbed absent an abuse of discretion. *Hammons v. State*, Okl.Cr., 560 P.2d 1024 (1977); *Sam v. State*, Okl.Cr., 510 P.2d 978 (1973). On numerous occasions this Court has applied the rule set forth in *Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639, 1642–43, 6 L.Ed.2d 751 (1961), wherein the United States Supreme Court stated:

". . . To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. . . ." (Citations omitted) See also *Anderson v. State*, Okl.Cr., 551 P.2d 1155 (1976), and *Shapard v. State*, Okl. Cr., 437 P.2d 565 (1967).

Having carefully reviewed the record before us, we find no indication that the jurors did not reach a verdict based solely on the evidence presented. We hold the trial court properly overruled the motion for change of venue.

## II

The appellants next contend that the trial court erred in admitting prejudicial evidence of adultery. Briefly stated, such evidence consisted of the following: In 1971 appellant Frye was forced to resign his ministry in the Assembly of God Church because of a rumored love affair with appellant Collins; Collins and Frye were seen meeting for out-of-the-way rendezvous on numerous occasions in 1971 and 1972; in 1975 Frye told his accomplices he wished Wayne Collins killed so he could marry appellant Collins. In September, 1975, Frye introduced appellant Collins to accomplice Thurman Overfelt and his daughter, Claudette Damron, as his fiancee; and Frye and Collins were together from immediately after the murder on November 21, 1975, until their marriage in May, 1976.

We are aware that evidence of a clandestine affair between a minister and a parishioner in a small town would tend to excite the prejudices and passions of the jurors. It is equally obvious, however, that such a relationship would be relevant to prove motive for the murder. It is particularly useful where the evidence is wholly circumstantial. *Upchurch v. State*, 59 Okl.Cr. 412, 60 P.2d 395 (1936).

■ The appellants point out that adultery is a crime pursuant to 21 O.S.1971, § 871, and as a general rule where a defendant is put upon trial for one offense he or she is to be convicted, if at all, by evidence which shows that he or she is guilty of that offense alone. The admission of evidence of other crimes, either prior or subsequent to the offense for which he or she is on trial, is inadmissible. *Wing v. State*, Okl. Cr., 579 P.2d 196 (1978); *Atnip v. State*, Okl.Cr., 564 P.2d 660 (1977). However, evidence of separate and similar offenses is admissible when it is material and proper to show motive, intent, absence of mistake or accident, identity of persons charged with commission of the crime for which an accused is put on trial, or a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other. *Galindo v. State*, Okl.Cr., 573 P.2d 1217 (1978); *Burks v. State*, Okl.Cr., 568 P.2d 1311 (1977). The appellants argue that adultery is not similar to murder and does not come within the exception. This is an incorrect interpretation.

■ Where evidence of an offense is admitted to prove absence of mistake or accident or identity of the accused, similarity of offenses would often be necessary for the offenses to be relevant. However, the other crime need not be similar to the crime charged to be probative of motive. In *Jones v. State*, Okl.Cr., 542 P.2d 1316 (1975), evidence that a defendant had earlier pled guilty to robbery was admissible to prove motive for commission of a dissimilar offense, murder. In order to avoid imprisonment for the robbery, the defendant burned his murder victim and planted his own identification on the body so that he, the defendant, would appear to be the victim.

Furthermore, we disagree with the appellant's contention that the evidence improperly reflected upon the character of the appellants before they first raised the issue. Such argument is refuted by *Garrett v. State*, 95 Okl.Cr. 44, 239 P.2d 439 (1951), a homicide prosecution in which this Court held that proof of a relationship between an

unmarried female defendant and a married male victim was admissible to prove motive, notwithstanding it might incidentally tend to reflect on the character of the accused.

 The appellants also contend the evidence lacked probative value to prove an affair and particularly that evidence of an affair in 1971 was too remote in time to be relevant to the trial issues. Wide latitude is permitted in the admission of evidence to establish motive, however, and the fact that the evidence is weak and inconclusive goes to its weight, a jury question, rather than its admissibility. 22A C.J.S. Criminal Law § 614. Likewise, evidence will not be rejected because of its alleged remoteness where it appears relevant to the offense charged and its admissibility rests in the sound discretion of the trial court. *Dickey v. State*, 97 Okl.Cr. 28, 257 P.2d 319 (1953). Here, it was not an abuse of discretion to admit evidence logically tending to prove the appellants' relationship originated as early as 1971. Furthermore, contrary to the appellants' assertion, it was not necessary that the State prove adultery by a preponderance of the evidence as is required in the divorce jurisdiction of the state; whether the evidence was sufficient to prove a motivating relationship whether or not it established adultery.

### III

In the first and third assignments of error, the appellants argue that the evidence against appellant Collins was not sufficient to sustain a verdict of guilty, and that she should have been granted a continuance. This Court held in *Hubbard v. State*, 71 Okl.Cr. 373, 112 P.2d 174 (1941), that love letters between the defendant and the alleged killer of her husband were admissible to establish a motive for the crime of murder, but reversed her conviction because the evidence was insufficient to prove "a conspiracy on her part to commit the murder or any overt act on her part to carry it into effect." The theory advanced by the State is that there was sufficient circumstantial evidence to prove that appellant Collins committed an overt act aiding and abetting the murder plot, thus rendering her a principal in the crime under 21 O.S.1971, § 172.

The State's case, in addition to proof of motive, rests primarily upon numerous statements made by Frye to his accomplices in the course of the alleged conspiracy. During the summer of 1975, Frye told Thurman Overfelt, an associate, that he was in love with Collins who would not divorce her husband to marry him, and therefore he wanted to hire someone to kill Wayne Collins. In September, 1975, Overfelt told Frye to contact Bill Diehl, through whom Frye met Rodney Eatmon on November 7. Eatmon, who pled guilty to the murder and testified for the State, agreed to do the job for $3,000.00 down and $4,500.00 on completion. According to Eatmon, Frye instructed him that the murder should be staged to appear to be a robbery, that Mr. Collins' body needed to be found for insurance purposes, that the crime should occur between 7:00 and 9:00 on the evening of November 21, and that Frye would arrange with Collins to have everyone, except the intended victim, out of the house on that evening. Frye also gave Eatmon a photograph of the Collins family and a map to their home in Sulphur. Eatmon then contacted John Moore, who agreed to be the actual "hit man," and in accordance with the murder plot, Wayne Collins was killed.

Eatmon was arrested for intoxication on the evening of the murder. He subsequently confessed to participating in the murder and implicated the others. According to Moore, he met Frye for the first time the day after the murder in Oklahoma City, where he received the balance of the contract price in cash.

Appellant Collins never met Eatmon, Moore or Diehl, and the murder plot was not discussed in her presence on the one occasion that she met Overfelt prior to the murder. Nor to the knowledge of any of the accomplices was appellant Collins ever taken into their confidence.

Wayne Collins was home alone the evening he was killed. Although Moore fled after the murder without stealing anything,

the State contends that appellant Collins had left her jewelry at home to support the robbery explanation. The State also urges that the photograph Frye gave Eatmon, although it was not available at trial, was provided by appellant Collins. Additionally, appellant Collins collected $30,000.00 in insurance proceeds on the death of her husband, and many months after the murder she telephoned Overfelt telling him she knew nothing of her husband's murder, but wished he would not admit knowing her if contacted by the police.

■ Regarding this line of evidence, appellant Collins argues that she was severely prejudiced by the testimony of Overfelt, Eatmon and Moore, which was hearsay as to her, and therefore the trial court committed reversible error by denying her motion for severance. We have not heretofore recognized as a ground for severance the introduction of a co-defendant's statement to a testifying co-conspirator which incriminates the defendant as to whom the co-defendant's admissions constitute inadmissible hearsay. A severance should be granted, however, when a co-defendant's admission or confession, made after the commission of the crime, to a witness or a police officer, is accusatory of the defendant. *Goodson v. State*, Okl.Cr., 562 P.2d 897 (1977); *Edmondson v. State*, Okl.Cr., 515 P.2d 1158 (1973); *Monroe v. State*, Okl.Cr., 512 P.2d 214 (1973); *Bruton v. United States* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

■ We are of the opinion that reversal is required in a case such as this where the admission of powerfully incriminating accusatory hearsay has the same prejudicial effect. Without the hearsay testimony of the accomplices the independent evidence against appellant Collins would not have supported a conviction in a separate trial.

The State, however, advances several theories for the admissibility of the accomplices' testimonies against appellant Collins. Relying on *Lewis v. State*, Okl.Cr., 574 P.2d 1063 (1978), the State urges that the testimony of the accomplices was not hearsay since the out-of-court declarant, appellant

Frye, took the stand and was subject to cross-examination. However, that case is inapplicable as dealing with the business records exception to the hearsay rule.

■ While the out-of-court statements made by a defendant are not considered hearsay as to that defendant, the statements allegedly made by appellant Frye are still hearsay as to appellant Collins. The fact that Frye ultimately took the stand to testify is irrelevant; it is clear that Collins was effectively denied the right of cross-examination, because both appellants were represented by the same attorneys and because appellant Frye never admitted making the statements.

■ The State next urges that the accomplices' testimonies were admissible against Collins as part of the res gestae of the homicide. *Pettigrew v. State*, Okl.Cr., 554 P.2d 1186 (1976); *Wolf v. State*, Okl.Cr., 375 P.2d 283 (1962). Frye's statements, however, were not made under circumstances so close in point of time to the homicide as to preclude the possibility of deliberation or fabrication, which is the primary purpose of this hearsay exception. *Coppage v. State*, 76 Okl.Cr. 428, 137 P.2d 797 (1943). To hold her subject to statements made by alleged co-conspirators as part of the res gestae would destroy the safeguard required in the co-conspirator's exception to the hearsay rule.

■ It is well settled that where two or more persons have conspired together to commit an offense any act or statement of one of such persons during the lifetime and in furtherance of the conspiracy, is admissible in evidence against all of the co-conspirators. *Doser v. State*, 88 Okl.Cr. 299, 203 P.2d 451 (1949). The rule in Oklahoma has been that the declarations of co-conspirators, made during the consummation of the conspiracy, are admissible against a defendant if he or she is connected to the conspiracy by independent competent evidence, even if the evidence is slight. *Sturgis v. State*, 2 Okl.Cr. 362, 102 P. 57 (1909); *Burns v. State*, 72 Okl.Cr. 432, 117 P.2d 155 (1941).

Having carefully read the record and transcript, we find the evidence insufficient to show that appellant Collins was involved in the conspiracy to kill her husband. Apart from the hearsay testimony (appellant Frye's statements) the evidence failed to justify an inference that Collins was actually involved in the conspiracy.

The love affair between the appellants as well as Collins' telephone conversation with Overfelt many months after the murder have only minimal probative value. The fact that Wayne Collins was home alone on the evening of the murder, that Mrs. Collins left her jewelry at home, and that the Collins family collected otherwise unsuspicious insurance proceeds on the death of Wayne Collins have no value independent of appellant Frye's admissions. Because she was not shown to be a member of the conspiracy, the hearsay evidence was inadmissible against appellant Collins. We hold appellant Collins was severely prejudiced by being tried jointly with Frye, and, therefore, her conviction must be reversed.

Finally, appellant Frye alleges that the accomplices' testimonies were not sufficiently corroborated and that the other competent evidence against him was insufficient to sustain his conviction. The requirement that testimony of an accomplice be corroborated is found in 22 O.S.1971, § 742, which provides:

"A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

Here, the trial court instructed the jury that Overfelt, Eatmon and Moore were accomplices whose testimonies had to be corroborated.

The State contends, however, that Overfelt was at most an accessory pursuant to 21 O.S.1971, § 173, and therefore his testimony was sufficient to corroborate Eatmon and Moore. To be an accomplice, the actions of the witness must make him a principal pursuant to 21 O.S.1971, § 172. It is well established that if under all the facts of the case the witness could be indicted for the offense with which the defendant stands accused, the witness is an accomplice. *Howard v. State*, Okl.Cr., 561 P.2d 125 (1977); *Farrar v. State*, Okl.Cr., 505 P.2d 1355 (1973).

Although the charges against him were subsequently dismissed, Overfelt was listed in the original information in this case as a co-defendant. By his own admission and knowing that co-defendant Frye's intent was to procure the murder of Wayne Collins, Overfelt aided Frye by telling him to contact Bill Diehl, who ultimately put Frye in touch with the hired killer.

Where the acts and conduct of a witness are admitted, it becomes a question of law for the court to decide whether or not those acts make the witness an accomplice. *Farrar v. State*, supra. This Court has repeatedly held that where the evidence clearly shows that a witness is an accomplice the trial court should submit an instruction that the witness is an accomplice and that his testimony must be corroborated. *Williams v. State*, Okl.Cr., 518 P.2d 322 (1974). We find that the evidence of Overfelt's involvement in this crime would clearly support an indictment and the trial court properly ruled as a matter of law that Overfelt's testimony could not be used to corroborate the testimonies of accomplices Eatmon and Moore. It therefore remains to be determined whether there is sufficient direct or circumstantial evidence to corroborate the testimony of these accomplices.

As to the adequacy of corroborative evidence, it must of itself, and without the aid of the testimony of the accomplice, tend in some degree to connect a defendant to the commission of the offense charged. If an accomplice's testimony is so corroborated as to a single material fact, the jury may infer that he speaks the truth as to all, and this Court will take the strongest view of the corroborating testimony that it warrants. *Sperry v. State*, Okl.Cr., 543 P.2d 582 (1975); *Sanders v. State*, Okl.Cr., 341 P.2d 643 (1959).

The corroborative evidence is not sufficient, however, if it requires any of the accomplices' testimony to form the link between the defendant and the crime, or if it tends only to connect the defendant with the perpetrators but not the crime. *Howard v. State*, Okl.Cr., 561 P.2d 125 (1977); *Rider v. State*, Okl.Cr., 494 P.2d 347 (1972).

In the instant case, we hold there was sufficient independent evidence to connect appellant Frye to the commission of the crime. In addition to the evidence relating to motive, the State proved that Frye purchased a cashier's check from the Norman Bank of Commerce on November 15, 1975,—less than a week before the murder—in the amount of $4,500.00. This check and the accompanying mortgage agreements with that bank, have corroborative value in that they are consistent in time with the murder and tend to support the murder contract price testified to by all three accomplices. We therefore find the final assignment of error to be without merit.

For the above and foregoing reasons, the judgment and sentence of appellant Richard Frye is *AFFIRMED*; the judgment and sentence of appellant Dorothy Collins Frye is *REVERSED* in accordance with *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

BRETT, J., concurs.

BUSSEY, J., not participating.