**Robert Mitchell WATKINS, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–85–185.**

Court of Criminal Appeals of Oklahoma.

Oct. 5, 1987.

Rehearing Denied Nov. 9, 1987.

Mark Barrett, Sp. Counsel, Public Defender System, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Robert Mitchell Watkins, was charged, tried, and convicted in the District Court of Muskogee County for the crimes of First Degree Murder in Count I, and Injury to a Minor Child in Count II. He received a sentence of life imprisonment for Count I and twenty (20) years for Count II. From these judgments and sentences, he appeals, raising eight assignments of error.

On the morning of May 26, 1984, the appellant, Robert Mitchell Watkins, accompanied by Stanley Alexander, went to the home of appellant's estranged common law wife, Sharee Mins, to inquire whether he could visit their child, La Shonda Mins. Appellant was greeted at the door by Charles Wright, dressed only in his underwear and socks, and was denied access to his daughter. Angered with his wife's alleged romantic involvement with Wright, combined with the denial of seeing his fifteen month old daughter, appellant then drove to Fort Gibson with Alexander to visit Mike Isom, where he obtained a .38 caliber revolver. The pair then returned to Muskogee but were unsuccessful in their attempts to find shells for the revolver. Subsequently, the appellant drove to Alexander's house where Alexander gave him a .410 shotgun and two shells. Appellant left for several hours but later returned to pick up Alexander and Tyrone Hammons. Testimony by Alexander and Hammons revealed that appellant had placed the shotgun across the console in the front seat of the car. The group then spent the evening listening to music, drinking, and smoking marijuana at Elliott Park. They then drove to Taft, Oklahoma for several hours before returning to Muskogee. Upon their return, appellant stopped at Weddle's Grocery Store near Sharee Mins' home and got out of the car with the shotgun wrapped in a coat. As appellant walked off toward Ms. Mins' home, Alexander and Hammons drove back to Alexander's home in appellant's car.

Muskogee police officer John Stretch first arrived at the shooting scene at approximately 9:30 p.m.. The officer observed Charles Wright laying in the kitchen floor of the Mins' home in a pool of blood. An investigation of the scene revealed that Wright was shot in the face by a single shotgun blast through the kitchen window. Detective Paul Mahew testified at trial that his investigation of the murder scene revealed that the shotgun was rammed through the window and held up to Wright's head when it was fired. At the time he was shot, Wright was holding appellant's child, La Shonda Mins, on his lap and the child received minor lacerations on her face and scalp from the broken glass. Appellant's car was subsequently located later that night and contained a shotgun shell on the floor board. On the following day, Katherine Bobo, a neighbor of Mins, discovered a .410 shotgun in a flower bed at another neighbor's residence. The weapon was recovered by Detective Allen Simmons and was later identified at trial by Alexander as being the gun he gave to appellant on the day of Charles Wright's murder.

In his first assignment of error, the appellant contends that the trial court was without jurisdiction to impose the judgment and sentence because the State never filed another information after the court dismissed the appellant's case upon the State's motion. Testimony by Gary Sturm, investigator for the District Attorney's office, revealed that because Alexander and Hammons were trying to protect the appellant, they had not told him the truth when first questioned about whether they witnessed the appellant get out of the car behind Weddle's Grocery Store with a loaded shotgun. Sturm stated that because

Sharee Mins also backed up their stories, the charges were originally dropped on June 27, 1984, which was the same day the case was originally scheduled for preliminary hearing.

Prior to his release, the appellant told investigators that the gun belonged to Alexander. It was at that point that both Alexander and Hammons related the truth of how they had witnessed the appellant get out of the car with a gun. Shortly thereafter, the State moved to withdraw its motion to dismiss and the trial court then withdrew its order of dismissal. The appellant had no objection to the order of dismissal being withdrawn, and a new date for preliminary hearing was then scheduled.

Although the better practice would have been to formally refile an information, we find no prejudice toward the appellant, and the information was impliedly reinstated by the formal withdrawal of the motion to dismiss. Moreover, at the time the trial court granted withdrawal of the motion to dismiss, appellant made no objection to the method used. Error, if any, was harmless, and absent an affirmative showing of prejudicial error, the action of the trial court will be affirmed. *Fogle v. State,* 700 P.2d 208 (Okl.Cr.1985). This assignment is without merit.

■ In his second assignment of error the appellant alleges that there was insufficient evidence linking him to the murder independent of the testimony of Alexander and Hammons. He contends that Alexander and Hammons were accomplices to the murder, therefore their testimony required corroboration. We disagree. It is well established that if under all the facts of the case, the witness could be indicted for the offense with which the defendant stands accused, the witness is an accomplice. *Frye v. State,* 606 P.2d 599 (Okl.Cr.1980).

Although Alexander had loaned the appellant the shotgun and two shells, there is nothing in the record which indicates that Hammons or Alexander were aware of what would transpire on the day of the murder. The only other involvement either Hammons or Alexander had in the crime was their concealment of the appellant's actions in getting out of the car with the gun behind the grocery store. They concealed these facts during their initial questioning by police in order to protect the appellant. The connections of the witnesses with the crime were innocent and lacking in criminal intent, therefore neither could be considered a principal pursuant to 21 O.S. 1981, § 172. Finding neither Alexander nor Hammons to be accomplices, we conclude that their testimony, combined with other direct and circumstantial evidence, proved the appellant's guilt beyond a reasonable doubt.

■ Moreover, when the sufficiency of the evidence is challenged on appeal, the relevant question is whether, after reviewing the evidence in a light most favorable to the State, a rational trier of fact should have found the essential elements of the crime beyond a reasonable doubt. *Spuehler v. State,* 709 P.2d 202 (Okl.Cr.1985). We find there was evidence from which the jury could reasonably have reached such a conclusion. This assignment is without merit.

In his third and fourth assignments of error, the appellant alleges that the trial court erred by failing to instruct on the corroboration required for accomplice testimony as well as failing to instruct the jury regarding their consideration of the prior inconsistent statements of defense witness Sharee Mins, concerning the appellant's threats on the victim's life prior to the murder. Initally, we note that the appellant did not object to the instructions given and did not submit requested instructions to the trial court. Therefore, this assignment was not properly preserved for appellate review. *Clark v. State,* 718 P.2d 375 (Okl.Cr.1986).

Moreover, we have previously determined that Alexander and Hammons were not accomplices, therefore such instructions were not warranted. With regard to Ms. Mins' inconsistent statements, the appellant was not unduly prejudiced by this testimony. The jury had already heard evidence that the appellant was upset over his wife's romantic involvement with the victim, became angry on the day of the

murder when he was greeted at his wife's door by the half-dressed victim, and then proceeded on a search for a gun and ammunition. Therefore, the jury was not swayed substantially by the fact that Ms. Mins' testimony was inconsistent as to the appellant's threats on the victim's life. These assignments are without merit.

Next, the appellant contends that he was denied effective assistance of counsel at trial because defense counsel did not request accomplice instructions and because he failed to prevent the court from admitting the prior inconsistent statements of Ms. Mins. As previously noted, we do not find the instructions in question necessarily warranted or critical to this case. Furthermore, in light of our previous disposition of the issue of the absence of these instructions, we hold that appellant has not met his burden in persuading this Court that but for counsel's errors, a different result would have obtained in the verdict. *Foster v. State*, 714 P.2d 1031 (Okl.Cr.1986). This assignment is without merit.

█ In his sixth assignment of error, the appellant contends that there was insufficient evidence to sustain his conviction of Injury to a Minor Child. We agree. Title 21 O.S.Supp.1982, § 843 provides that:

> Any parent or other person who shall willfully or maliciously injure, torture, maim, or use unreasonable force upon a child under the age of eighteen (18), or who shall cause, procure or permit any of said acts to be done, shall be punished by imprisonment in the State Penitentiary not exceeding twenty (20) years, or by imprisonment in a county jail not exceeding one (1) year, or by a fine of not less than Five Hundred Dollars ($500.00) nor more than Five Thousand Dollars ($5,000.00), or both such fine and imprisonment.

In no way does the record before us disclose the fact that the appellant "willfully or maliciously" injured his daughter, La Shonda Mins, as required by § 843. We are of the opinion that all willful and malicious intent was directed toward Charles Wright, not La Shonda Mins, an innocent bystander of the murderous act. The injuries suffered by the minor were more the result of a reckless disregard for human life than that of intent to injure, torture, or maim as mandated by the statute. The statutory language being clear and readily understandable, we find the element of intent lacking in the present case.

The appellant next contends that the trial court erred by failing to submit his requested jury instruction on the credibility of informers. He asserts that because Alexander and Hammons were informers, they had something to gain by testifying for the State; therefore, the request for a cautionary instruction should have been granted. We disagree. At trial, the jury was instructed regarding their consideration of any voluntary statements, admissions, and prior felony convictions as affecting the weight and credibility of the witnesses. The jury was further instructed generally on the value to be assessed each witnesses' testimony and concerning the burden of proof. The instructions given to the jury were sufficient in their entirety to assist the jury in assessing the evidence, and the appellant was not prejudiced by the lack of such instruction. The instructions that were given were a matter solely within the discretion of the trial court, and will not be interfered with because the instructions fairly and accurately state the applicable law. *Allison v. State*, 675 P.2d 142 (Okl.Cr.1983).

Finally, the appellant alleges that reversible error resulted from the excusal of prospective jurors who stated that they were unable to impose the death penalty under any circumstances pursuant to the guidelines of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). This argument has clearly been rendered moot by virtue of the jury sentencing the appellant to a sentence of life imprisonment. This assignment is without merit.

The judgment and sentence in Count I is AFFIRMED, and the judgment and sentence in Count II is REVERSED and REMANDED with instructions to DISMISS.

PARKS, J., concurs.

BRETT, P.J., specially concurs.

BRETT, Judge, specially concurring:

I specially concur in this decision for the following reasons. On June 27, 1984, a Release Order was signed on the basis of the State's Oral Motion to Dismiss Without Prejudice. The minute entry for June 27, 1984, in CRF–84–199, recites the following:

STATE vs. ROBERT MITCHELL WATKINS. Drew Edmondson for State dismissed case without prejudice. SIGNED: J.R. SETTLE, SP. DIST. JUDGE.

The minute entry for June 28, 1984, recites the following:

STATE vs. ROBERT WATKINS. CRF–84–199. W.E. Edmondson for State; def. appeared with attorney David Garrett; State withdraws oral motion to dismiss and Court withdrew Order of Dismissal granted to State on 6–27–84. Def. offered no objection; New PH set for 7–26–84 at 10:00 a.m. def. held without bond. SEND NOTICES.

J.R. SETTLE, SP. DISTRICT JUDGE

It is my opinion that this decision is not opening the door for district attorneys to move for withdrawal of an order to dismiss in any case. Because of the unique circumstances of this case, and because the defendant was present with counsel when the district attorney, on the following day, moved to withdraw the dismissal since the defendant did not object, can this procedure be reconciled? If a written order dismissing the case had been entered and if defendant's bail had been exonerated, a new information would have been required. In this case, the defendant was being held without bail. Otherwise, it is my position that the trial court would have been without jurisdiction to impose judgment and sentence, as contended by appellant. It should be further stated, when defendant entered his plea at arraignment, without objections, any defect in the information was waived.

Therefore, I specially concur in this decision.